El Pueblo de Puerto Rico, demandante y apelado, *v.* Carmelo Berdecia, acusado y apelante.

Núm. 8731.—*Sometido:* Julio 9, 1941. *Resuelto:* Julio 26, 1941.

*Agustín E. Font,* abogado del apelante; *Hon. Procurador General Interino Emilio de Aldrey, R. A. Gómez, Fiscal del Tribunal Supremo,* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Carmelo Berdecia y Juan Sarria Pacheco eran policías insulares que prestaban servicios en Ponce en y antes del primero de enero de 1936. En una misma acusación se les imputó un delito de asesinato en segundo grado por la muerte de Alessio Martinó. Solicitaron juicio por separado y habiéndose celebrado primero el de Sarria Pacheco, fué convicto éste de acuerdo con la acusación y sentenciado a cumplir doce años de presidio, sentencia que fué confirmada por este tribunal. *Pueblo* v. *Sarria,* 57 D.P.R. 882.

En un juicio posteriormente celebrado, Berdecia fué también convicto del mismo delito y sentenciado a cumplir diez años de presidio. Contra esa sentencia interpuso el presente recurso.

La participación que según la prueba de cargo tuvo Berdecia en la comisión del delito fué la de haber aconsejado o instigado a Sarria Pacheco a matar a la víctima. La prueba de cargo es sustancialmente igual a la aducida en el caso de *Pueblo* v. *Sarria*. Por consiguiente no es necesario hacer una nueva exposición de la misma. Bastará con remitirnos a lo que entonces dijimos.

La de descargo tiende a demostrar que el acusado en ningún momento aconsejó ni instigó la comisión del delito; que por el contrario, cuando el acusado se dirigió al sitio de los sucesos, es decir, a la sala del Hospital Tricoche donde yacía la víctima en una camilla y frente a él Sarria Pacheco de pie, lo hizo con el propósito de evitar que éste pudiese realizar alguna agresión contra Martinó, pues se había percatado de que Sarria se hallaba muy nervioso y la víctima lo provocaba profiriendo injurias contra el cuerpo de la policía en general y contra Sarria en particular.

Nueve son los errores que el apelante imputa a la corte inferior.

Consiste el primero en no haber sido declarada con lugar la moción de archivo y sobreseimiento presentada por el acusado de acuerdo con el artículo 448 del Código de Enjuiciamiento Criminal y el artículo 2 de la Ley Orgánica.

Sin duda desde el 17 de marzo de 1936 en que se presentó la acusación, hasta el 15 de marzo de 1937, en que se celebró el juicio de este caso, transcurrió con exceso el período de 120 días fijado por el artículo 448 del Código de Enjuiciamiento Criminal. Pero, ¿hubo o no justa causa para la dilación? ¿Abusó de su discreción el juez sentenciador al negarse a ordenar el archivo y sobreseimiento de la causa? Esa es precisamente la cuestión a resolver. Como dijéramos

anteriormente, los acusados solicitaron juicio por separado y les fué concedido. Se celebró la vista del caso contra Sarria Pacheco los días 1, 2 y 3 de febrero de 1937, legalmente dentro de los 120 días, pues si bien hubo algunas suspensiones, lo fué por justa causa y por consiguiente interrumpieron el término. Durante ese lapso de tiempo la Corte de Distrito de Ponce estuvo sumamente ocupada y no habiendo podido celebrar el juicio contra Sarria, parece razonable que se esperase su terminación para entonces señalar el de Berdecia. Habiendo terminado el juicio en el caso de Sarria el 4 de febrero de 1937 y habiéndose celebrado el 15 de marzo siguiente el seguido contra Berdecia, sólo había transcurrido poco más de un mes entre la terminación de uno y el principio del otro. Consideradas todas las circunstancias del caso, no nos sentimos justificados en alterar la conclusión a que llegó la corte sentenciadora al usar de su discreción en el sentido de negarse a archivar y sobreseer esta causa. Véase el caso de *People* v. *Morán* (Cal.) 77 P. 777.

A nuestro juicio no existe el primero de los errores señalados.

El segundo señalamiento de error consiste en haberse negado la moción del acusado para que el fiscal presentase un pliego de particulares especificando qué participación tuvo el apelante en la muerte de Alessio Martinó.

La jurisprudencia en materia criminal reconoce a todo acusado el derecho a solicitar por medio de un pliego de particulares que se le suministren los detalles de la participación imputádale en la comisión del delito, siempre que esos datos sean necesarios para la preparación de su defensa. En el presente caso, Carmelo Berdecia y Juan Sarria Pacheco fueron acusados como autores o principales (artículo 36, Código Penal) del asesinato de Alessio Martinó, alegándose que realizaron el crimen haciéndole un disparo de revólver mientras el referido Alessio Martinó yacía herido en una cama en la sala de emergencia del Hospital Municipal

de Ponce (Tricoche), infiriéndole y produciéndole, allí y entonces, una herida de tal gravedad que fué la causa inmediata de la muerte ilegal de Alessio Martinó, acaecida el día primero de enero de 1936 en la Clínica Pila, de Ponce. No se especifica qué participación tuvo cada uno de los acusados en la comisión del delito, datos éstos necesarios para la preparación de su defensa. En tales circunstancias, no abrigamos duda de que el acusado tenía derecho a solicitar la información a que se refería su escrito sobre pliego de particulares. Sin embargo, la concesión de dicho pliego va dirigida a la sana discreción del tribunal y esa discreción no puede ser revisada o alterada a menos que se demuestre no sólo un manifiesto abuso de discreción, si que también que se han lesionado los derechos sustanciales del acusado. *Lanasa* v. *State,* (Md.) 71 A. 1058, 1062; *State* v. *Lassotovitch,* 81 A.L.R. 69; Abbott's *Criminal Trial Brief,* págs. 112 y 113, y casos citados.

Asumiendo que en el presente caso haya existido abuso de discreción al negarse a conceder el pliego de particulares, no resulta de los autos que el apelante sufriera perjuicio alguno por la falta de dicha información. Por el contrario, de la transcripción de evidencia surge claramente que el acusado estableció su defensa sin dificultad alguna y que conocía perfectamente bien la participación que en la realización del crimen se le imputaba.

■■ El tercer señalamiento de error consiste en haber admitido la corte la declaración del testigo José Antonio Rivera, cuyo nombre no aparecía al dorso de la acusación.

En una larga serie de casos este tribunal ha venido sosteniendo que no existe precepto legal alguno que obligue al fiscal a relacionar en la acusación todos los testigos de cargo de los cuales pueda tener conocimiento y que es discrecional en la corte sentenciadora admitir el testimonio de un testigo cuyo nombre no aparezca al dorso de la acusación, no siendo revisable su discreción a menos que se demuestre perjuicio

alguno para el acusado. Véanse: *Pueblo* v. *Román,* 18 D.P.R. 219, y el más reciente de *Pueblo* v. *Berenguer,* ante, pág. 81. Al mismo efecto véase también Abbott's *Criminal Trial Brief,* páginas 400 a 402. No solamente no aparece de los autos que la declaración del testigo perjudicara o constituyese una sorpresa para el acusado, sino que de la prueba surge que el abogado defensor tenía conocimiento personal de dicha declaración.

El cuarto señalamiento de error está basado en haber eliminado la corte la declaración del testigo Pedro Serrano, que se refería a que la misma noche de los sucesos Sarria Pacheco había agredido al periodista Gómez Mesorana.

La materia sobre la cual fué interrogado este testigo era irrelevante y de ser admitida su declaración en cuanto a ese extremo, hubiese podido desviar la atención del jurado de la verdadera cuestión en controversia.

En el caso de *Pueblo* v. *Sarria,* supra, también trató la defensa de presentar prueba de cierta riña entre el interfecto y un individuo llamado Américo Delgado, y este tribunal, sosteniendo la negativa de la corte sentenciadora a recibirla, dijo:

"La corte sentenciadora puede negarse a permitir que un testigo declare sobre hechos que en nada afectan el delito cometido. La riña habida entre el interfecto y una tercera persona, o si se quiere, la agresión del interfecto a esa persona, en nada pudo afectar el crimen cometido por el acusado."

Lo mismo podríamos decir en el presente caso. El hecho de que Sarria Pacheco antes de dar muerte a Martinó, hubiera agredido a Gómez Mesorana, no afecta la evidencia presentada por el fiscal tendente a demostrar que el apelante instigó o coadyuvó en la comisión de este delito.

Se imputa error a la corte sentenciadora por haber permitido que el testigo Arsenio Acosta declarase que cuando llegó el acusado al Hospital Tricoche, momentos antes del

crimen, el acusado se hallaba en estado de embriaguez. Sostiene la defensa que ésa era una conclusión de hecho del testigo y que por esa razón no era admisible.

Esa evidencia era perfectamente admisible, toda vez que el testigo expuso las observaciones que hiciera y que lo llevaron a la conclusión de que el acusado al llegar al hospital se hallaba en estado de embriaguez. El jurado que oyó tales observaciones pudo determinar por sí mismo, usando su propio criterio, si en efecto la conclusión a que había llegado el testigo estaba justificada o si por el contrario carecía de fundamento y por tanto no debía aceptarla. Tampoco se cometió el quinto de los errores señalados.

■■ El sexto señalamiento de error se expone así:

"Por haberse dado instrucciones al jurado después de haber ido éste a deliberar, sin que dichas instrucciones fueran previamente solicitadas por el Fiscal, por la defensa o por el jurado, resultando dichas instrucciones oficiosas y una orden o conminación implícita para que se rindiera un veredicto cuando el jurado, después de mucho tiempo de deliberación, había informado que les era absolutamente imposible llegar a un acuerdo."

Lo sucedido, conforme resulta del récord, es que cuando sólo habían transcurrido veinticuatro horas desde que empezó la deliberación, el jurado pidió ser llevado a presencia de la corte, a lo que se accedió. Una vez en corte abierta, estando presentes el fiscal y la defensa, el jurado, por voz de su presidente, dirigiéndose a la corte, manifestó que ellos creían que no podían llegar a un veredicto por existir diferencia de criterio que creían no podría ser armonizada. El juez interrogó al fiscal y a la defensa si tenían algo que manifestar en relación con lo solicitado por el jurado, y habiendo contestado ellos que nada tenían que exponer, el juez, sin usar frase alguna que pudiera interpretarse como una indicación de que el veredicto debería ser en uno u otro sentido, dirigiéndose a los señores del jurado les indicó la conveniencia de que continuasen deliberando por algún tiempo más, a fin de tratar de llegar a un veredicto en uno u otro sentido. Es

verdad que algún tiempo después el jurado trajo un vere-
dicto de culpabilidad, pero ello no implica que este veredicto
fuese influído por las palabras de la corte. En presencia de
la defensa y del fiscal, una vez leído el veredicto, el juez in-
terrogó individualmente a cada uno de los señores del ju-
rado si aquél era su veredicto y si lo habían votado de su
libre y espontánea voluntad y todos y cada uno de ellos con-
testaron afirmativamente.

A nuestro juicio, actuó correctamente la corte al insistir
en que la deliberación se prolongase por algún tiempo más,
dada la importancia del caso, la duración del juicio—tres
días—y el tiempo relativamente corto que habían estado de-
liberando. Era razonable que el juez recordase a los seño-
res del jurado del deber impuéstoles por la ley de actuar de
acuerdo con su conciencia y de acuerdo con la prueba, evi-
tando así que alguno o algunos de los jurados queriendo
evadir su responsabilidad pudiesen lograrlo, manifestando
que sustentaban una opinión de que en realidad no partici-
paban. Veinticuatro horas de deliberación en un caso de esta
importancia no parece un término tan largo que no justifi-
case al juez en insistir en que el jurado no se disolviese
todavía.

No cabe aceptar la teoría de la defensa de que fué éste
un veredicto por transacción (*compromise verdict*) ya que de
acuerdo con las instrucciones emitidas por la corte sólo ca-
bían dos veredictos: culpable o no culpable; y por consi-
guiente al llegar todos a un acuerdo no puede decirse que
habían emitido un tercer veredicto distinto a aquél que re-
presentaba el verdadero sentir de todos los miembros del
jurado. No existe, pues, el sexto de los errores señalados.

El séptimo señalamiento consiste en imputar a la
corte error al transmitir sus instrucciones y al denegar al-
gunas y enmendar otras de las solicitadas por la defensa.

Hemos examinado cuidadosamente las transmitidas por
la corte, y considerándolas como un todo, en realidad no en-
contramos que la corte inferior cometiera error alguno al

transmitirlas. El juez no está obligado a trasmitir en su totalidad una instrucción solicitada por la defensa si cree que en parte es errónea. Su deber es enmendarla y trasmitirla entonces, si es que la materia no ha sido suficientemente cubierta por las instrucciones generales.

Se queja el apelante de que en este caso el juez rehusó instruir al jurado sobre homicidio voluntario. Del récord no aparece evidencia alguna que justificase una instrucción sobre homicidio voluntario. De haberla transmitido la corte hubiera incurrido en error. *Pueblo* v. *Sarria,* supra.

Los errores 8 y 9 carecen de importancia. Por el octavo se queja el apelante de que le fuese negada una moción de nuevo juicio basada en los errores anteriormente señalados. Y por el noveno alega, por las mismas razones, que el veredicto es contrario a la ley. Como uno y otro señalamientos de error están predicados en los que previamente hemos discutido, y puesto que hemos llegado a la conclusión de que no existen, debemos también concluir que éstos tampoco existen.

*Procede, por lo expuesto, la confirmación de la sentencia.*
El Juez Asociado Sr. Todd, Jr., no intervino.