EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* BELÉN OLMEDA, acusada y apelante.

Núm. 11351.—*Sometido:* Mayo 8, 1946. *Resuelto:* Mayo 20, 1946.

*Diego O. Marrero,* abogado de la apelante; *Hon. Procurador General E. Campos del Toro, Luis Negrón Fernnández, Primer Procurador General Auxiliar* y *J. Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Se acusó ante la corte de distrito a Belén Olmeda de haber obtenido dinero de Josefa Quiñones viuda de Maldonado valiéndose para ello de falsas y fraudulentas simulaciones. La acusación decía que la acusada fué donde la Sra. Quiñones y le dijo que cierta profesora deseaba que la acusada le gestionara un préstamo de la Sra. Quiñones en la suma de $100 con los correspondientes intereses; que para garantizar este préstamo, la profesora firmaría y juraría un pagaré ante un notario; que luego la acusada volvió donde la Sra. Quiñones y le entregó un pagaré diciéndole que la profesora lo había firmado y jurado ante un notario con el fin de que la acusada pudiera obtener el préstamo de $100 de la Sra. Quiñones para la profesora; que la Sra. Quiñones, creyendo estas manifestaciones de la acusada, le dió $100 para que se los entregara a la profesora en calidad de préstamo; que ninguno de estos hechos era cierto y que la acusada lo sabía; y que la acusada hizo todo esto con la intención criminal de obtener por medio del fraude la suma de $100 de la Sra. Quiñones, cantidad que obtuvo la acusada apropiándosela para su beneficio, defraudando con todo ello a la Sra. Quiñones en dicha cantidad.

El Fiscal radicó tres acusaciones adicionales. Cada una le imputaba a la acusada haber obtenido $100 de la Sra. Quiñones en tres ocasiones más empleando las mismas falsas y fraudulentas simulaciones, en las cuales empleó los nombres de otras tres profesoras. Los casos se consolidaron para juicio; la acusada fué convicta por el jurado en las cuatro acusaciones; y ha apelado de las sentencias imponiéndole un año de presidio en cada caso.

La acusada se queja de la actuación de la corte inferior al declarar sin lugar sus excepciones perentorias a cada una de las acusaciones. Citando entre otras autoridades una Nota en 27 L.R.A. (N. S.) 363 y algunos de los casos allí discutidos, descansa la acusada en la bien establecida proposición de que debe existir una conexión causal entre las falsas representaciones y la obtención del dinero. *People* v. *Pearson,* 231 P. 612 (Calif., 1924); *Willis* v. *State,* 271 P. 725 (Ariz., 1928). Intentando aplicar ese principio a este caso, la acusada alega que de las acusaciones se desprende que la Sra. Quiñones fué inducida a entregarle a ella el dinero porque recibió un pagaré otorgado ante notario, y no debido a falsas representaciones de la acusada.

No puede la acusada escapar tan fácilmente de las consecuencias de su conducta. El hecho de que también engañó a un notario, quien estuvo muy lejos de cumplir con su deber,(1) no la absuelve de los delitos aquí imputados. Aquí se alega cada eslabón en la cadena necesaria para que concurra el delito de obtener dinero mediante falsas simulaciones. La acusada, de acuerdo con las acusaciones, le hizo a la Sra. Quiñones las siguientes simulaciones a sabiendas de que eran falsas: una profesora deseaba hacer un préstamo de la Sra. Quiñones a través de la acusada; la profesora otorgaría un pagaré para garantizar el préstamo; el pagaré

---

(1) Hoy hemos dictado una resolución ordenando al Fiscal de este Tribunal que investigue la conducta del notario y que radique un informe de tal investigación.

que trajo luego la acusada estaba firmado por la profesora; la acusada entregaría los $100 que la Sra. Quiñones le dió para que se los llevara a la profesora.

Se cometieron estas falsas simulaciones con la intención de defraudar a la Sra. Quiñones; ésta las creyó, e hizo entrega de su dinero debido a ellas. Por tanto las acusaciones alegaron suficientemente todos los elementos del delito de obtener dinero mediante falsas simulaciones. Artículo 470, Código Penal, ed. 1937; *Pueblo* v. *Ferrer,* 43 D.P.R. 987, 988–90; *Pueblo* v. *Flores,* 33 D.P.R. 800. En cuanto a la teoría de la acusada de que el único factor que indujo a la Sra. Quiñones a entregarle el dinero fué el pagaré otorgado ante notario, basta decir que la autenticidad del pagaré fué una de varias simulaciones falsas hechas por la acusada que le permitieron tener éxito en su plan de obtener dinero de la Sra. Quiñones mediante falsas simulaciones.

La acusada señala como error el haberse negado la corte inferior a declarar con lugar su moción sobre particulares en la que solicitaba más detalles en cuanto al contenido de los pagarés. Asumiendo, sin decidirlo, que "haya existido abuso de discreción al negarse a conceder el pliego de particulares, no resulta de los autos que el apelante sufriera perjuicio alguno por la falta de dicha información." *Pueblo* v. *Berdecia,* 59 D.P.R. 318, 322.

El notario declaró que la acusada le había llevado los pagarés ya firmados, y que aceptó su afirmación de que las profesoras los habían firmado y certificó que éstas los habían jurado ante él. Las profesoras declararon que no habían firmado los pagarés ni recibido dinero alguno de la acusada. La acusada no presentó prueba con excepción de su propia declaración negando conexión alguna con el caso. Bajo las circunstancias no encontramos error perjudicial en la negativa de la corte inferior para que se le exigiera al Fiscal que le suministrara a la acusada más información en cuanto al contenido de los pagarés. Véase *Pueblo* v. *Berdecia,* supra.

██ La acusada se queja de la admisión en evidencia, con su oposición, de tres de los pagarés por el fundamento de que había una incongruencia entre las alegaciones de las acusaciones y los pagarés al efecto de que las acusaciones decían que los pagarés eran pagaderos a favor de Josefina Quiñones viuda de Maldonado, con el correspondiente interés, por un mes, mientras que los pagarés introducidos en evidencia eran pagaderos a Josefina Quiñones, devengaban intereses al 9 por ciento y vencían a los 3, 4 y 8 meses, respectivamente. Las incongruencias señaladas eran inmateriales a los delitos imputados por las acusaciones. *People* v. *Weaver*, 274 P. 361, 363-4 (Calif., 1928); *People* v. *Revley*, 227 P. 957, 960 (Calif., 1924); *State* v. *Brown*, 113 P. 782 (Wash., 1911). Por tanto la corte de distrito no cometió error al admitir en evidencia los pagarés.

██ Finalmente arguye la acusada que en este caso no se estableció la obtención de dinero por medio de falsas simulaciones, mediante la declaración de un testigo acompañada de circunstancias corroborantes, según lo exige el artículo 252 del Código de Enjuiciamiento Criminal.(2) Pero el récord está repleto con las declaraciones de las profesoras y del notario y las admisiones de la acusada a un detective, que corroboran la declaración de la Sra. Quiñones en cuanto al fraude perpetrado con ella. *People* v. *Walker*, 231 P. 572, 580-1 (Calif., 1924); *People* v. *Wymer*, 199 P. 815 (Calif., 1921); *People* v. *Mace*, 234 P. 841 (Calif., 1925).

*Las sentencias de la corte de distrito serán confirmadas.*

---

(2)El artículo 252 prescribe como sigue: ''En un juicio por el delito de haber obtenido por medio de superchería, con la idea de defraudar a otro intencionalmente, la firma de alguna persona en un documento, o por haber obtenido de alguna persona dinero, bienes muebles o cualesquiera otras cosas de valor, el acusado no puede ser declarado convicto, și dicha superchería o engaño se hizo de palabra, sin mediar prenda o escrito alguno falso, a menos que dicho engaño o superchería constare de algún modo por escrito, con la firma o letra del acusado, o fuere probado con la declaración de dos testigos, o la de uno solo, acompañada de circunstancias corroborantes . . . ''. Asumimos, sin decidirlo, que aquí no existe ningún escrito falso según lo define el artículo 252.