EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* WALDEMIRO ARROYO NÚÑEZ, acusado y apelante.

*Número:* CR-70-105          *Resuelto:* 27 de abril de 1971

*E. L. Belén Trujillo,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante Waldemiro Arroyo Núñez fue acusado y convicto del delito de hurto mayor y condenado a cumplir la pena de uno a tres años de presidio. El veredicto del jurado fue por unanimidad. Ante nos apunta que el tribunal de instancia incidió (1) al declararlo culpable bajo la imputación de que el delito cometido era el de hurto mayor; (2) al darle crédito a la declaración increíble de la única testigo doña Belén Bonilla Santiago; (3) al denegar la moción de nuevo juicio; (4) que siendo la Sra. Bonilla una cómplice del apelante su testimonio no fue corroborado; y (5) que el fiscal hizo un comentario sobre el silencio del apelante. Estos apuntamientos son inmeritorios.

Los hechos del caso son los siguientes:

La única testigo, la Sra. Bonilla, testificó que vive en las Parcelas Aguilita de Juana Díaz y que Bernardo Báez Flores es su hijo de crianza; que éste trabajaba en la Central Mercedita en Ponce y allí sufrió un accidente del trabajo hacía como tres años y quedó mudo e incapacitado; que con motivo de ese accidente contrataron los servicios de un abogado para gestionar el pago de compensación en el Fondo del Seguro del Estado; que el acusado es líder obrero y tres veces trajo en su automóvil a Bernardo, a ella y a su hija Carmen Báez al Fondo del Seguro del Estado, en San Juan,

para vistas médicas; que de un cheque de $800 que recibió Bernardo un mes antes de las navidades de 1967 en concepto de dietas por el accidente, ella le pagó al acusado $60 por haberlos traído a San Juan tres veces; y que envió a su hija Carmen Báez a depositar en el banco $600 a nombre de Bernardo Báez Flores. Continuó declarando esta testigo que allá para el 20 de febrero de 1968 el acusado trajo en su automóvil a ella, a Carmen y a Bernardo, al Fondo del Seguro del Estado, en San Juan; que el acusado les dijo que esperaran afuera mientras él entraba a las oficinas del Fondo; que al poco rato el acusado regresó con un cheque de $1,000 para Bernardo y ella le dijo que lo cambiarían en Ponce; que entonces el acusado le dijo que iba a cambiar el cheque en San Juan porque él tenía que coger $500 ya que él había "averiguado" el caso; que al decirle la testigo que "este cheque lo vamos a cambiar en Ponce" ella hizo "así para cogerlo . . . así para echarlo en la cartera y él me hizo así" y él le dijo que había que cambiarlo en San Juan; que no se acordaba si el apelante se lo arrebató pero que sabía que "tenía parte del cheque cogida . . ."; que ella se opuso a ello pero el acusado se fue en su automóvil con Carmen y Bernardo dejándola a ella en la acera frente al Fondo; que como a la media hora regresó el acusado con el cheque cambiado y le entregó $500 en un sobre. Dijo, además, que regresaron a Juana Díaz con el acusado y en el camino ella le decía que por qué él había hecho eso de haber cambiado ese dinero porque él no podía cogerlo y él le dijo "usted se va a joder y yo cambié los $500"; que el acusado no hizo otra gestión que la de traerla a San Juan y llevarla luego a Mercedita, en Ponce, y que ella no lo había contratado para que hiciera gestión alguna; que los $500 que le entregó el acusado los mandó a depositar al banco a nombre de Bernardo.

Durante la repregunta la testigo ratificó que el acusado le llevó el cheque de su mano cuando ella iba a cogerlo para echarlo en la cartera y que él le dijo que había que cambiarlo

en San Juan; que el acusado cambió el cheque y cogió para él $500 y que ella no lo había autorizado a eso; que se querelló al fiscal de distrito allá para julio de 1968; que su referida hija se fue de la casa con el apelante el mes anterior. Dio como razón para querellarse que encontró la libreta de ahorros en que ella había ordenado a su hija que depositase los primeros $600 y los siguientes $500 de su hijo, y fue a notificar que su hija y el apelante habían sacado todo el dinero. Confrontada con su anterior declaración (a los efectos de que cuando el apelante regresó del Fondo con el cheque de $1,000 se lo entregó a ella y ésta lo puso en su cartera; que entonces Waldemiro le dijo que había que cambiar el cheque porque $500 eran de él porque "el caso de Bernardo yo lo averigué"; que al él insistir en que el cheque tenía que cambiarse ella se lo entregó y él fue con Edith a cambiarlo mientras la testigo permaneció en la acera con Bernardo) dijo que no se acordaba de eso pero admitió que se acordaba mejor de los hechos en julio de 1967 que en el día del juicio. En igual forma se demostraron otros conflictos de poca monta en detalles de los hechos del caso entre su testimonio y su declaración anterior. El fiscal hizo traer a Báez como testigo pero éste no contestó las preguntas que se le hicieron y sólo hizo gestos con la cabeza.

El cheque de $1,000 aparece endosado por Bernardo Báez con su marca, huellas digitales y las firmas del apelante y de Edith Báez como testigo de la marca, de manera que el testimonio de la Sra. Bonilla en el juicio respecto a que Bernardo acompañó al apelante a cambiar el cheque de $1,000 es más creíble que su declaración al efecto de que Bernardo permaneció con ella.

Arguye el apelante que del testimonio de la Sra. Bonilla surge que el apelante se apoderó del dinero mediante treta o engaño; que el dueño del cheque, Bernardo Báez, no se opuso que el cheque se cambiase; que Báez no había sido declarado incapaz y que la Sra. Bonilla no había sido nom-

brada su tutora; que no hubo prueba de que dicho dueño se opusiese a la entrega de $500 al apelante; que por lo tanto no hubo hurto de ese dinero sino posiblemente hurto mediante treta o engaño al obtener dinero mediante falsa representación o abuso de confianza o robo; que el testimonio de la Sra. Bonilla resulta increíble, habiendo incurrido en contradicciones al juzgársele a la luz de su declaración anterior y su testimonio en el caso posterior de abuso de confianza seguido en contra de su hija; que debió concederse un nuevo juicio por las razones antes relacionadas y porque se descubrió nueva prueba; que como el taquígrafo no transcribió las notas sobre los informes de las partes, el apelante está impedido de apuntar que el tribunal de instancia permitió al fiscal comentar el silencio del acusado.

El delito de hurto es definido en el Art. 426 del Código Penal (33 L.P.R.A. sec. 1681), como el acto de sustraer, con intención criminal, bienes muebles o semovientes pertenecientes a otra persona; y el Art. 428 de dicho Código (33 L.P.R.A. sec. 1683), dispone que hurto de mayor cuantía es el que se comete cuando el valor de la propiedad sustraída es de cien dólares o más, o cuando la propiedad es sustraída de la persona.

1.—La prueba demuestra que el apelante retuvo el cheque en contra de la voluntad de la Sra. Bonilla quien cuidaba de su hijo adoptivo Bernardo Báez, dueño del cheque, quien se había incapacitado y había perdido el habla como resultado de un accidente en el trabajo. El hecho de que Báez lo endosase no es indicativo de que consintiese en que el apelante, luego de cambiar el cheque en efectivo, se apropiase $500 de dicho efectivo. La prueba no revela que Báez se opusiese a esa apropiación, pero la Sra. Bonilla, que en todo momento actuaba por él, sí se opuso activamente a dicha apropiación. No puede decirse que dicha falta de oposición del dueño constituyese un consentimiento de su parte a que el apelante retuviese para sí la mitad del importe en

efectivo del cheque en cuestión. Ni siquiera puede decirse que hubo un consentimiento pasivo de su parte dado su estado de incapacidad. El apelante advino en la posesión del importe del cheque y retuvo la mitad del mismo en contra de la activa oposición de la Sra. Bonilla. El acto de Báez endosarlo, lo que permitió que el apelante lo cambiase, no constituyó un consentimiento consciente, voluntario, de parte de Báez para que el apelante obtuviese legalmente la posesión de dicho importe y para que luego se apropiase $500 del mismo.

Dijimos en *Pueblo* v. *Irlanda Rivera*, 92 D.P.R. 753 (1965), que:

". . . este delito [el de hurto] se comete en el momento mismo de la sustracción, de manera que la sustracción puede ser por breves instantes . . . que no es necesario que la persona de quien se hurtó tenga el dominio de los bienes ni aun el derecho a su posesión ni que el encausado tenga conocimiento de la identidad del dueño; que el apoderamiento de la cosa sustraída es el elemento esencial del delito . . . . Constituye hurto, también la sustracción de bienes no obstante el acatamiento pasivo del dueño, siempre y cuando que (1) éste no indique un deseo de que los bienes se tomen; (2) el acusado ignore el deseo del dueño; (3) no exista acuerdo entre ambos sobre la apropiación y (4) haya ausencia de gestiones por parte del dueño para inducir la sustracción."

Convenimos con el Procurador General en que "No se trata en este caso de un delito de hurto cometido mediante treta o engaño (*larceny by trick*), ya que el acusado no obtuvo la posesión del dinero por medio de fraude o engaño sino que, por el contrario, se apropió de los $500 abiertamente y contra la objeción expresa de Belén Bonilla Santiago.

"Tampoco está envuelto en el caso de autos el delito de abuso de confianza. El acusado nunca tuvo la posesión legal de los $500.00. Por el contrario, el apelante adquirió la posesión de ese dinero ilegalmente sin el consentimiento del dueño, constituyendo esa apropiación ilícita un delito de hurto mayor."

Dijimos en *Pueblo* v. *Landráu,* 78 D.P.R. 276 (1955), que "... *Cuando el acusado sólo tiene la custodia de la propiedad, y valiéndose de dicha custodia adquiere la posesión ilegalmente, la aprobación ilícita se convierte en un delito de hurto.*" (Énfasis nuestro.)

[1] Informa el Procurador General correctamente que tampoco se trata aquí de un delito de robo. La prueba demostró que el acusado sustrajo la cantidad de $500 perteneciente a otra persona. No surge de la prueba que dicha sustracción se hiciera por medio de la violencia o de la intimidación. El hecho de que el acusado tomara el cheque de las manos de la Sra. Bonilla para ir a cambiarlo al banco no constituye la violencia o intimidación que exige el Art. 238 del Código Penal.([1]) Además, el delito de hurto en este caso no se cometió al momento del acusado tomar el cheque para ir a cambiarlo al banco, sino que se cometió en el momento de la apropiación de los $500 luego de ser cambiado el cheque, ya que el delito de hurto se comete en el momento mismo de la sustracción. *Pueblo* v. *Rosario,* 80 D.P.R. 624 (1958). Véase Wharton *Criminal Law and Procedure,* Vol. 2, sec. 466, págs. 107–108.

Añade el Procurador General correctamente que:

"Tampoco están presentes en el caso de autos los elementos del delito de obtener dinero mediante falsa representación penado por el artículo 470 del Código Penal (33 L.P.R.A. sec. 1815). Para que quede constituido ese delito debe aparecer tanto de las alegaciones como de la prueba: (1) la intención de defraudar, (2) el fraude en sí, (3) las falsas representaciones usadas para perpetrar el fraude, y (4) que tal perpetración haya sido hecha por medio de las falsas representaciones como causa que indujo a la persona dueña de los bienes a desprenderse de ellos. *Pueblo* v. *Flores,* 33 D.P.R. 800 (1924); *Pueblo* v.

---

([1]) La violencia conlleva el uso de fuerza o agresión y la intimidación implica una conducta que ocasione en la víctima el temor a daño corporal. *Pueblo* v. *Gómez,* 71 D.P.R. 816 (1950); *Pueblo* v. *Marengo,* 66 D.P.R. 824 (1947); Art. 239 del Código Penal (33 L.P.R.A. sec. 852).

*Olmeda,* 66 D.P.R. 177 (1946).

En el presente caso el acusado no utilizó falsas representaciones para apropiarse de los $500.00. Tampoco surge que el dueño de la propiedad se desprendiera de ella inducido por falsas representaciones del acusado. Por el contrario, el acusado se apoderó del dinero en forma manifiesta contra la voluntad expresa de Belén Bonilla y sin el consentimiento de Bernardo Báez Flores, persona incapacitada a cuyo nombre estaba expedido el cheque.

■ . . . no había base en las alegaciones [ni fundamento en derecho] . . . que justificara que se dieran instrucciones al jurado sobre los delitos de 'larceny by trick', abuso de confianza, robo, ni sobre el delito de obtener dinero mediante falsa representación. Por consiguiente, no cometió error el tribunal sentenciador al no transmitir al jurado instrucciones sobre esos delitos, ya que la prueba sólo daba margen para un veredicto absolutorio o condenatorio del delito de hurto." *Pueblo* v. *Cortés Muñiz,* 93 D.P.R. 781 (1966).

■ 2.—No obstante las contradicciones en cuanto a algunos detalles de los hechos, entre el testimonio de la Sra. Bonilla y una declaración suya anterior en relación con los hechos de este caso, nada increíble o improbable aparece de su testimonio el cual habiéndole merecido crédito al jurado, es suficiente para sostener la condena del apelante.

■ El apelante se refiere a una declaración prestada por la Sra. Bonilla en un caso de abuso de confianza seguido contra Carmen Báez, ante el Tribunal Superior, Sala de Ponce, el día 5 de agosto de 1969. Esa declaración fue prestada por la Sra. Bonilla en un juicio celebrado con posterioridad al proceso en el caso de autos. El apelante pretende impugnar ahora, por primera vez en apelación, el testimonio de esa testigo con una declaración posterior prestada por ella. Evidentemente ello es improcedente, pues la impugnación de la veracidad de un testigo a base de manifestaciones incompatibles debe hacerse ante el tribunal de instancia con prueba de manifestaciones inconsistentes anteriores al acto del juicio.

Véanse 32 L.P.R.A. sec. 2151; *Pueblo* v. *Pacheco*, 83 D.P.R. 526 (1961); *Pueblo* v. *Martell Cajigas*, 88 D.P.R. 636 (1963); *Pueblo* v. *Vélez Robles*, Sentencia de 16 de diciembre de 1970.

■ 3.—El tribunal de instancia no incidió al denegar la moción de nuevo juicio. La alegada prueba nueva consistía de una supuesta certificación del Fondo del Seguro del Estado acreditando que el cheque de $1,000 fue enviado al Sr. Báez a Ponce y un alegado contrato escrito por el cual la Sra. Bonilla había contratado los servicios del apelante por $500.00. Obviamente esta prueba pudo ser obtenida y presentada en el juicio por el apelante mediante el ejercicio de una diligencia razonable. *Pueblo* v. *Vázquez Izquierdo*, 96 D.P.R. 154, 157 (1968). Los otros fundamentos de la referida moción son los apuntamientos previamente discutidos.

■ 4.—Se apunta que siendo la Sra. Bonilla un cómplice, su testimonio no fue corroborado. No hay prueba alguna en el récord demostrativa de que esta testigo tuviese participación alguna como parte gestora en los actos del apelante que dan motivo a esta causa.

■ 5.—Finalmente, el apelante se queja de que el fiscal comentó durante su informe al jurado, el derecho del acusado a permanecer en silencio, y que hizo otros comentarios lesivos a su derecho a un juicio justo e imparcial. Aclara el apelante que está impedido para discutir esta alegación porque el taquígrafo no tomó las notas taquigráficas de los informes al jurado a pesar de que él no renunció a que se tomaran dichas notas.

En *Pueblo* v. *Vélez*, 77 D.P.R. 817, 819–820 (1955), dijimos:

"Es de conocimiento general que en las causas criminales que se ventilan ante nuestros tribunales superiores, los taquígrafos repórters nunca toman taquigráficamente los informes que— luego de terminada la prueba oral y antes de que el juez trasmita sus instrucciones al jurado—hacen tanto el fiscal como la

defensa. . . . De esa práctica podemos tomar conocimiento judicial. Si un acusado desea que esos informes sean tomados taquigráficamente debe solicitarlo así del tribunal de manera expresa. De lo contrario, su silencio a ese respecto puede interpretarse como una renuncia a tal derecho.

En el presente caso no aparece del récord que la defensa solicitara del tribunal que ordenara al taquígrafo a tomar los informes del fiscal y del abogado defensor. Por lo tanto, el acusado renunció a su derecho a que se tomaran taquigráficamente dichos informes. *Cf. Pueblo* v. *Fournier*, 80 D.P.R. 390, 414–415 (1958) ; *Pueblo* v. *Matos Pretto*, 93 D.P.R. 113, 122–123 (1966).

En vista de lo expuesto *debe confirmarse la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 28 de abril de 1969.*

El Juez Presidente Interino, Señor Pérez Pimentel, no intervino.