**El Pueblo de Puerto Rico**, demandante y apelado, *v.* **Santiago González Castro**, acusado y apelante.

Núm. 8647.—*Sometido:* Junio 5, 1941. *Resuelto:* Julio 8, 1941.

*Abelardo Casanova Prats*, abogado del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

**El Juez Presidente Señor Del Toro** emitió la opinión del tribunal.

Este caso guarda relación con el del *Pueblo* v. *Berenguer* que acabamos de decidir (ante, pág. 81), con el del *Pueblo* v. *Escobar*, 55 D.P.R. 505 y con los del *Pueblo* v. *López de Victoria* y *Pueblo* v. *Segarra*, desistidos en diciembre 1, 1940, en el sentido de haber sido González Castro acusado conjuntamente con Berenguer, Escobar, López de Victoria y Segarra, como autor del mismo delito, el asesinato de Luis A. Irizarry, Coronel de la Guardia Nacional. Todos los acusados pidieron juicio por separado y separadamente fueron juzgados, dictándose la sentencia en cuanto a González Castro, aquí apelada, condenándolo a reclusión perpetua, el 17 de octubre de 1938.

La extensa transcripción del récord no fué radicada en la secretaría de esta Corte Suprema hasta enero 27 de este año de 1941, y no obstante haberse dejado transcurrir el término reglamentario para la presentación del alegato sin archivarlo,

se señaló la vista del recurso en marzo 7 para abril 21 último. No compareció el apelante ese día y el recurso fué desestimado a petición del fiscal.

Así las cosas, pidió el apelante por su abogado la reapertura del recurso y esta corte accedió finalmente en mayo 6, 1941, concediéndole hasta el veinte para presentar su alegato y señalando la vista para junio 5, 1941.

En su alegato el apelante se refiere al radicado en el caso del *Pueblo* v. *Berenguer,* ante, pág. 81—el abogado es el mismo—y hace constar que sus señalamientos segundo al décimosexto nada tienen que ver con este recurso, pero sí los otros que promete discutir incidentalmente con los cuatro adicionales que imputa a la corte al declarar sin lugar su petición de disolución del jurado, al denegar su moción de nuevo juicio y al dictar sentencia en contra suya. Argumenta entonces conjuntamente los dos primeros que se refieren a la disolución del jurado, y al llegar al tercero y al cuarto se limita a decir que han sido ya discutidos al serlo los anteriores. Sólo se levanta, pues, una cuestión, la de si debió o no disolverse el jurado por los motivos alegados por la defensa.

Veamos cuáles son esos motivos. Declaraba como testigo el fiscal Guillermo S. Pierluisi. Lo interrogaba la defensa y ocurrió lo que sigue según aparece a las páginas 395 y siguientes de la transcripción de evidencia:

"¿Habló usted con el acusado?—Sí, señor.—¿Le tomó declaración?—Le pregunté.—¿Le tomó declaración?—Se negó a declarar.—¿Le tomó declaración?—Se negó a declarar.—¿Le advirtió el derecho que tenía?—Sin necesidad de advertírselo. No dió lugar, estaba como una avispa. No quiso declarar y lo dejé entonces.—¿A pesar de que usted habló con él?—Claro.—¿Sin tomarle taquigráficamente lo que dijo?—Sí, señor.—¿Qué taquígrafo estaba allí?—El taquígrafo de la fiscalía.—¿Cuál?—Font.—¿Podría refrescar la memoria con él?—Podría refrescar mi memoria.—Que llamen al taquígrafo Font para que refresque. la memoria.—(Juez): ¿Quiere refrescar su memoria?—(Testigo): Sí, señor.—Venga el taquígrafo Font.—

(Lic. Toro Nazario) : El taquígrafo Font creo que no está juramentado.—(Testigo Sr. Pierluisi) : También podría, si me permite el compañero, buscar las declaraciones.—(Lic. Toro Nazario) : Sí, cómo no.—(Testigo Sr. Pierluisi) : Aquí están.—(Lic. Toro Nazario) : ¿Hay un récord taquigráfico de lo que dijo?—Sí, señor, pero no declaró. Se negó a declarar.—Entonces, no necesitamos al taquígrafo Font. ¿Usted tiene un récord taquigráfico de lo que dijo? ¿Y cómo dice que se negó a declarar?—El taquígrafo lo coge todo. Cualquier palabra suelta que diga un acusado, y él reiteró que no quería declarar, aunque no podía obligarlo.—¿Y de qué hablaron, si usted recuerda?—Le enseñé un retrato que se ocupó en el bolsillo de Antongiorgi.—¿Qué más?—Un momentito, tenga calma. Este retrato y le pregunté que quiénes eran.—(Fiscal Rodríguez Serra) : ¿Quién aparece ahí?—El y Antongiorgi de brazo.—(Lic. Toro Nazario) : ¿De qué más le habló él?—Estaba como vulgarmente se dice, como un 'guabá' y no quiso declarar.—Tenga la bondad de buscar sus notas, a ver qué más habló, refrescando su memoria.—Aquí hay un detalle importantísimo, que el compañero con su gran habilidad, y que nosotros lo tenemos para la prueba de 'rebuttal', cuando declare el acusado, si es que va a declarar. Si el compañero lo quiere hacer así, que pregunte y le contesto el detalle para que lo sepa.—Un momento, ha refrescado su memoria y quiere declarar habiendo visto sus notas. Respetuosamente pido a S. Sa. que dicte una regla en cuanto a este particular. Ya él ha refrescado su memoria y hace tiempo que viene demostrando hostilidad.—(Fiscal Pierluisi) : Estoy siendo demasiado complaciente con el compañero, porque la investigación de un fiscal es privada. Soy demasiado tolerante, porque la ley me da derecho de advertir que son privadas, pero como no me interesa ocultar nada. Hay materias que podrían dar lugar a destruir la coartada del acusado, y el compañero quiere pescar desde ahora, para después preparar su prueba, sabiendo lo que este hombre pudo haberle dicho al fiscal. El fiscal está dispuesto a leerle al compañero toda la declaración, excepto en un punto importante, que coincide con la coartada, que si el compañero se entera, pudiera ser que estuviera más cómodo para preparar al acusado a los efectos de una coartada. El compañero no sabe lo que está aquí.— (Juez) : ¿Qué alegación hace el fiscal?—En cuanto a ese aspecto, mantenemos el derecho de la investigación privada, y le advierte al compañero que las investigaciones del fiscal son privadas, y todavía no se ha presentado en evidencia la declaración del acusado.—(Lic. Toro Nazario) : Respetuosamente sometido.—(Juez) : La corte, de

acuerdo con la ley y la jurisprudencia de la Corte Suprema de Puerto Rico, cree que las investigaciones hechas por los fiscales son privadas y no está obligado el fiscal a descubrir su investigación.

"(Lic. Toro Nazario): Tomamos excepción respetuosamente, y entonces, señor Juez, respetuosamente pedimos la inmediata disolución del jurado, por el fiscal haber hecho alusión a documentos para refrescar su memoria y la mucha hostilidad a las preguntas que se le vienen haciendo, obligan al acusado a pedir la disolución del jurado, sobre la base de un 'mistrial', porque ha llevado al ánimo del jurado hechos y circunstancias que dependen de prueba que todavía no ha presentado, y ha prejuiciado de antemano el ánimo y la disposición buena o mala que pudieran tener los señores del jurado. En estas circunstancias, y en abierta violación de la Ley de Evidencia y de la protección que deba tener un acusado, ha prejuiciado a los señores del jurado sobre el carácter de su defensa, que pueda exponer en su turno este abogado. (El Lic. Toro Nazario argumenta extensamente su moción de 'mistrial'.)—(Fiscal Pierluisi): El compañero tiene la culpa, y como abogado tengo que suponer que sabe bastante, pues de lo contrario deberá quitarse la toga. El compañero debe saber que estas declaraciones o datos de un fiscal son privados, y es malicioso y no puede ser de otra manera, que se interprete en otra forma. De lo contrario, si no es malicioso, es ignorancia crasa. (El Fiscal Pierluisi argumenta extensamente su moción de oposición a la moción de 'mistrial')—(Lic. Toro Nazario): Perdóneme la corte, pero pido que el taquígrafo tome nota para tomar la acción pertinente.—(Juez): La regla general es que los argumentos no se toman. No se toma nada más que la exposición cuando se hace una moción.—(Lic. Toro Nazario): Voy a suplicar que se haga una estipulación, para lo que el fiscal se atreva a decir, dependamos de la memoria de S. Sa. Lo que el fiscal acaba de decir, dependemos de la memoria de S. Sa.—(Juez): El Fiscal dice que si ha entrado en esos detalles, fué porque la defensa lo llevó ahí. Esa es la situación.—(Lic. Toro Nazario): La defensa añade que el fiscal en su informe aludió a que estaba conferenciando con el acusado, y dijo específicamente que estaba tratando de emparejar una coartada con el hecho de que teníamos esas notas, porque el acusado no se acordaba, y que estaba pescando evidencia...—(Fiscal Pierluisi): Que me deje terminar el compañero. Tengo derecho a suponer eso. Si el compañero quiere, haría una estipulación; si lo quiere, que se dé por presentado esto en evidencia.—(Lic. Toro Nazario): Continúe argumentando.—(Fiscal Pierluisi): Conteste mi pregunta. ¿Acepta S. Sa. esta declaración?—(Lic. Toro Nazario): No puedo aceptar lo

que no he visto.—(Fiscal Pierluisi): Sostengo mi oposición.—(Juez): ¿Terminó la argumentación de la moción de 'mistrial'?—(Fiscal Pierluisi): Si acepta toda la declaración.—(Juez): La corte declara sin lugar la moción de 'mistrial'.....

''(Lic. Toro Nazario): Nosotros respetuosamente vamos a reproducir la moción de 'mistrial', alegando como motivo adicional y especial las manifestaciones...—(Juez): ¿Es una moción de reconsideración?—(Lic. Toro Nazario): Pidiendo la disolución del jurado, porque el fiscal, en parte de su argumentación, ha hecho manifestaciones que tienden a desprestigiar a este abogado; no solamente como abogado en el ejercicio de su profesión, sino como abogado de este acusado, y que tienden además a desprestigiar a este acusado, a base de hechos y circunstancias que no constan de la prueba.—(El Lic. Toro Nazario argumenta su moción de reconsideración.)—(Fiscal Pierluisi): ¿Qué hace el compañero argumentando? ¿Cuál es la moción?—(Lic. Toro Nazario): Una moción de 'mistrial'.—(Fiscal Pierluisi): Ya la resolvió la corte.—(Lic. Toro Nazario): Es una nueva moción.—(El Lic. Toro Nazario continúa argumentando.)—(Fiscal Pierluisi): El jurado no debe disolverse, porque al compañero se le antoje que el jurado haya recibido prueba que lo ha prejuiciado o lo pueda prejuiciar. Los doce señores del jurado son doce personas íntegras, que están, de una manera honesta observando todo lo que aquí desfila.—(El Fiscal Pierluisi argumenta su oposición.)—(Juez): Sin lugar.—(Lic. Toro Nazario): Con nuestra excepción.''

Cita entonces la defensa el caso de *El Pueblo* v. *Marchand Paz,* 53 D.P.R. 671, 680, y sostiene que:

''Es verdad que en el caso citado el fiscal hizo las manifestaciones en su informe oral al jurado y que en el presente fueron hechas durante el curso del juicio y mientras el fiscal declaraba como testigo de la defensa. Pero lejos de tal diferencia aminorar el error de la corte al permitir tales manifestaciones, sin que la corte le llamara la atención al jurado sobre el hecho de que no le diera importancia a tales manifestaciones del fiscal; lejos de aminorar la falta el hecho de que el fiscal dijera esto como testigo, a nuestro entender, agrava más la situación perjudicando más al acusado ante los ojos del jurado pues prejuiciaba a éste de antemano en contra de la única defensa que luego habría de plantear el acusado, o sea, la defensa de coartada, que fué la única defensa del acusado pues basta sola-

mente leer el informe de la defensa y la prueba presentada para comprender que lo único que tendió a probar el acusado fué que no había estado en el sitio de los sucesos en el momento de los disparos sino en una tienda cercana a su casa, habiendo pasado todo el resto de la mañana entre su casa y la clínica donde estaba recluída su señora madre.

"De manera que cuando la defensa presentó su prueba de coartada ya la misma había sido desacreditada ante los ojos del jurado por las manifestaciones del fiscal sin que la corte hiciera el más mínimo esfuerzo por aclararle la situación al jurado y por advertirle que no le diera crédito a estas manifestaciones del fiscal, ya que las mismas eran inadmisibles, todo a pesar de las protestas de la defensa, de las mociones de 'mistrial' y de las excepciones tomadas no solamente en cuanto a las manifestaciones tendentes a desacreditar la defensa de coartada del acusado sino en cuanto a las palabras del fiscal tendentes a menospreciar y ridiculizar al abogado del acusado ante los ojos del jurado; todo ante la actitud de tolerancia y paciencia de la corte para con el fiscal y hasta de asentimiento a ciertas manifestaciones del fiscal en relación con el abogado de la defensa al manifestar la corte: 'el fiscal dice que si ha entrado en esos detalles, fué porque la defensa lo llevó a ello. Esa es la situación.' "

Parece conveniente expresar antes de entrar en el estudio y resolución de los errores señalados, que no sólo es fuerte la prueba aportada por El Pueblo en relación con la intervención del acusado en los sucesos del 25 de julio de 1938 que culminaron en la muerte del Coronel Irizarry, si que esa prueba tiende a demostrar que fué precisamente el acusado el que hizo el disparo fatal.

Estudiado el incidente a través del récord, no produce en verdad una buena impresión. Pudo el fiscal limitar sus contestaciones a los hechos y suprimir toda clase de comentarios, y el juicio se hubiera desarrollado en plano más alto. La propia línea de conducta seguida por la defensa desde los comienzos del juicio, debió indicar al fiscal que le exigía un dominio mayor sobre sí mismo a fin de evitar dificultades y

complicaciones. De todos modos no encontramos que puedan derivarse del incidente las consecuencias que pretende el apelante.

El caso del *Pueblo* v. *Marchand Paz,* supra, que cita, es uno extremo y bien distinto del presente. Refiriéndose a los hechos ocurridos y fijando su alcance, dijo esta corte en el repetido caso de Marchand Paz, supra:

"Antonio Rivera Córdova fué llamado por el acusado con el fin expreso de lograr que él confesara haber dado muerte a Orlando Colón. No obstante, su declaración fué enteramente de carácter negativo y no se permitió que su deficiencia fuera subsanada ni por prueba positiva ni indirectamente, mediante testigos de impugnación. El supuesto matador confeso asumió un aire de absoluto desconocimiento de toda la situación. La defensa le preguntó expresamente si no había estado en cierta finca en la madrugada del domingo siguiente al viernes en que se dió muerte al policía y en la cual, con Cáceres, Moreau y Marchand, el acusado, les informó que había matado a Colón y que al que dijera algo 'le metía plomo en el cuerpo.' El testigo negó todo esto.

"Bajo las anteriores circunstancias tenemos que asumir que el jurado tenía conocimiento de la supuesta defensa. El fiscal destruyó con éxito toda tentativa de ofrecer, con otros testigos, prueba de la intervención de Rivera Córdova en el asesinato. Él pudo razonablemente haber terminado allí y haber confiado, en vista de la prueba directa que existía contra el acusado, en que se traería un veredicto condenatorio. Sin embargo, no satisfecho con su caso contra el acusado, manifestó al jurado que el testigo había ido a su oficina, luego de declarar en corte, y le había manifestado que la defensa le había ofrecido dinero (algunos dicen que $30), la cuantía no es importante, para que abandonara la isla y el acusado pudiera incriminarlo. No podemos exonerar al fiscal de un motivo ulterior al hacer esta manifestación al jurado. Podría colegirse inmediatamente que su fin principal fué demostrar que el acusado trataba de fabricar una defensa, y lo que es aún peor, el fiscal trataba de realizar su fin en una forma que en situaciones similares hemos condenado y que no son toleradas por la corte. *Pueblo* v. *Rojas,* y otros, supra. Si se recuerda que el mismo fiscal se había opuesto a toda prueba o comentario sobre la cuestión por parte de la defensa, su actuación resulta aún más injustificada. Esta no era una cuestión de evidencia im-

propia admitida debido a que la parte contraria no se había opuesto, sino un caso en que se presenta directamente al jurado y no mientras se admite la prueba, testimonio perjudicial que con toda probabilidad no se hubiera podido ofrecer desde la silla de los testigos.

"La conducta del fiscal con toda probabilidad ya había dejado una marca indeleble en el ánimo de los jueces de hecho. La manifestación del fiscal, de ser creída por el jurado, tendió a demostrar una admisión de culpabilidad por el acusado e indirectamente acusó a la defensa del serio crimen de tratar de sobornar a un testigo. No podemos determinar todo el efecto de semejante manifestación, pero a nuestro juicio, resultó inevitablemente perjudicial."

Aquí, por el contrario, nada demuestra deliberación por parte del fiscal. La referencia a la prueba de coartada surgió incidentalmente y en cierto modo provocada por la propia defensa. Ni puede dársele importancia decisiva. Probablemente el jurado la pasó por alto, como lo hizo la corte considerando el incidente como una de las muchas discusiones innecesarias habidas entre la defensa y el fiscal durante el juicio.

Como se dijo en el caso de *Marchand Paz,* supra, la jurisprudencia sobre esta materia es abundante y cada caso ha de fundarse en sus hechos específicos. Y los de éste en verdad, lo mismo en lo que se refiere al alegado descrédito de la prueba de coartada que en lo que concierne al alegado descrédito del abogado, no son trascendentales, no permiten afirmar que llegaran o debieron llegar a la conciencia del jurado perturbándola o inclinándola en determinado sentido. No se trata, pues, de un error perjudicial, y en su consecuencia no procede la revocación del fallo.

*Debe declararse sin lugar el recurso y confirmarse la sentencia recurrida.*

El Juez Asociado Sr. Todd, Jr., no intervino.