EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LEONIDES VEGA CEDEÑO, acusado y apelante.

Núm. 13996.—*Sometido:* Noviembre 8, 1949. *Resuelto:* Enero 26, 1950.

*Santos P. Amadeo,* abogado del apelante; *Hon. Procurador General Vicente Géigel Polanco* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

---

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Leonides Vega Cedeño fué acusado de los delitos de asesinato en segundo grado y ataque para cometer asesinato. Ambos casos se vieron conjuntamente ante jurado quien le declaró culpable del delito de homicidio voluntario en el primero y en el segundo lo absolvió. La corte inferior le condenó a cumplir una sentencia indeterminada de uno a diez años de presidio.

No conforme el acusado con la sentencia apeló y en este recurso alega que la corte inferior erró: (1) porque ciertas manifestaciones del fiscal al dirigirse al jurado en el sentido de que él renunciaría su cargo si el jurado absolvía al acusado le privó del derecho a un juicio imparcial, (2) que el veredicto del jurado absolviendo al acusado en el caso de ataque para cometer asesinato es inconsistente con el de culpabilidad en el presente caso, y (3) que el veredicto condenándole por el delito de homicidio voluntario constituye un veredicto por transacción (*bargain veredict*) producto de las manifestaciones del fiscal al jurado.

■ Los hechos relacionados con el primer señalamiento fueron expuestos en nuestra opinión en el caso núm. 13,376 de *Pueblo* v. *Vega,* 69 D.P.R. 406, en el que revocamos la resolución de la corte inferior concediendo un nuevo juicio. Las manifestaciones atribuídas al fiscal ocurrieron al dirigirse al jurado en su primer informe a éste después de terminada la prueba. De la transcripción de la evidencia no aparece que el taquígrafo que intervino en el juicio tomara dichas manifestaciones taquigráficamente pues lo único que consta es lo siguiente:

"Durante el primer informe del fiscal, éste dice que renuncia su puesto, con otros comentarios más, y el Lic. Ramos Antonini hace objeción a las manifestaciones del fiscal y argumenta sobre la objeción.

"Se le ordena por la corte al taquígrafo que tome lo que se diga ahora.

"Sr. Juez: Bueno, el fiscal no puede prometerle nada a los señores del jurado. (Instruye a los señores del jurado no tomen en consideración lo dicho por el fiscal sobre el incidente).

"Lic. Ramos Antonini: Verdaderamente poner a cambio de un veredicto la renuncia de su cargo de fiscal es la violación más flagrante que puede haber de los derechos de un ciudadano, a quien acusa un fiscal, a base de los hechos y no de lo que un fiscal pueda tomar como resolución. Eso sería la violación más violenta de ataque en que él podría incurrir. ¡Es demasiada juventud!

"Sr. Juez: él no ha indicado la intención de hacer un 'bargain'.

"Lic. Ramos Antonini: Yo tengo que levantarme a proteger los derechos del fiador (quiero decir acusado) e invitarlo a él, invitarlo para que en ningún caso incurra en el grave error que acaba de incurrir en este momento.

"Sr. Fiscal: A los efectos de que vaya al récord. No creemos haber incurrido en violación de principio o práctica legal alguna, pero sí ataco a él (al acusado) porque el caso está ante los señores del jurado, y sostenemos que tenemos el derecho de argumentar nuestro caso en la forma que lo indica el Tribunal Supremo. Si es cuestión de algún caso, que se traiga la jurisprudencia; que vengan los comentaristas.

"Sr. Juez: Vamos a seguir sin ofrecer el cargo y sin esperanza de comentar más el incidente."

No tenemos, pues, en el récord del caso la forma exacta y completa en que se produjo el fiscal ante el jurado. Tampoco tenemos el texto exacto de las instrucciones del juez al jurado en relación con las palabras del fiscal, ya que el taquígrafo, incorrectamente, se limitó a hacer constar que el juez "instruye a los señores del jurado no tomen en consideración lo dicho por el fiscal". Decimos incorrectamente porque la corte le había ordenado que tomara lo que se dijera y además porque, aun cuando la corte no se lo hubiera ordenado, era su deber tomar cualquier instrucción que trasmitiera la corte al jurado ya que, como dijimos en *Pueblo* v. *Colón*, 63 D.P.R. 385, 389: "Un taquígrafo no tiene derecho para ejercer su criterio en cuanto a qué instrucciones deben tomarse taquigráficamente. . . . Debe tratarse severamente a los taquígrafos de las cortes que dejan de cumplir su deber en cuanto a éste y a otros aspectos".

¿Cuáles fueron las palabras del fiscal al jurado? Veamos. Según lo que aparece del incidente en relación con la moción de nuevo juicio solicitado por el acusado a la cual se acompañaron dos declaraciones juradas concebidas en idénticos términos y prestadas por los dos abogados defensores del acusado Lics. Herminio Miranda y Ernesto Ramos Antonini y las cuales obran en el expediente del caso núm. 13,376, *Pueblo* v. *Vega,* supra, lo ocurrido fué lo siguiente:

"Que terminada la prueba y al dirigirse al jurado el Hon. Pablo Santiago Lavandero, Fiscal de Distrito de Bayamón, visiblemente emocionado y llorando copiosamente, dijo al jurado entre otras cosas: 'Caballeros Jurados, yo ocupo este puesto por la necesidad que tengo del mismo, pero, si ustedes absuelven a este acusado, yo renunciaré este puesto inmediatamente'."

El fiscal al contestar la moción de nuevo juicio negó que las frases que le atribuían los abogados defensores hubieren sido pronunciadas por él, sosteniendo en contrario que lo que dijo fué lo siguiente:

"Que durante el primer informe el Fiscal sí habló y comentó extensamente sobre la prueba, sobre los méritos de la misma para sostener ambas acusaciones; y de que en Puerto Rico algunos paneles de jurados no estaban haciendo la justicia que la sociedad demandaba de ellos, que de seguir los jurados en Puerto Rico, y específicamente los del distrito judicial de Bayamón impartiendo justicia en la forma que hasta hace poco tiempo se había venido haciendo por ellos, que él, el Fiscal por haber regresado del Ejército en que sirvió por cerca de tres años, había tenido la necesidad transitoria de ocupar un cargo público, el honroso cargo de Fiscal, se vería inclinado a renunciar dicho cargo; que se estaba dando el caso en Puerto Rico de que muchos criminales escapaban las garras de la justicia y especialmente aquéllos a quienes sus medios económicos le permitían reclutar en su interés los más brillantes abogados del foro puertorriqueño."

Negó además que hubiera llorado copiosamente, ni en ninguna otra forma, al dirigirse al jurado, aunque aceptó que estaba emocionado.

Para sostener su versión del incidente el fiscal acompañó declaraciones juradas prestadas por los Sres. Juan Ramón Rivera y Humberto Álvarez, submárshal y subsecretario respectivamente de la corte inferior, y por los Sres. Evangelista Félix, Ángel Martínez, Andrés Arroyo y Octavio Maldonado, miembros del jurado que intervino en el caso, todas ellas al efecto de que las palabras pronunciadas por el fiscal fueron, más o menos, las que éste expone en su moción, que en ningún momento el fiscal lloró y que el juez les instruyó *específicamente* que no debían tomar en consideración al resolver los casos lo dicho por el fiscal respecto a lo de su posible renuncia.

Bajo las circunstancias concurrentes en este caso no estamos en condiciones de resolver si las frases atribuídas al fiscal constituyen error perjudicial al acusado y tampoco si las instrucciones de la corte al jurado en relación con dichas frases fueron suficientes para curar el error, aún aceptando, sin resolverlo, que éste hubiera sido cometido. *Pueblo* v. *Zayas Ortiz,* 65 D.P.R. 538; *Pueblo* v. *Piazza,* 60 D.P.R. 575; *Pueblo* v. *González,* 59 D.P.R. 97.[1]

■ Si la corte inferior hubiera hecho constar en el récord las palabras exactas pronunciadas por el fiscal, y el taquígrafo hubiera cumplido con su deber de tomar y transcribir textualmente la instrucción de la corte al jurado, la situación sería distinta. Empero, no podemos tomar como base una serie de declaraciones juradas, contradictorias entre sí, en cuanto a lo que dijo el fiscal, para resolver que el error fué cometido, y menos aún, que no fué perjudicial al ser subsanado por las instrucciones, o que aun cuando cometido, no fué subsanado por éstas.

En el caso de *Pueblo* v. *Colón,* supra, al censurar la conducta del taquígrafo, dijimos: "Este caso presenta gráficamente las lamentables consecuencias que surgen de tal abandono del deber. Ningún derecho es tan fundamental bajo nuestras instituciones como la presunción de inocencia en un

---

[1] El caso de *Pueblo* v. *Marchand Paz,* 53 D.P.R. 671, citado por el apelante, por sus hechos, es muy distinto al de autos y por lo tanto, inaplicable.

·caso criminal. Sin embargo, esta Corte no tiene· ante sí una transcripción correcta de la instrucción·de la corte de distrito sobre dicha cuestión toda vez que el taquígrafo-repórter no tomó notas taquigráficas de dicha instrucción.''

En igual forma, en el presente, decimos que ningún dere·cho es tan fundamental bajo nuestras instituciones como el ·de ser juzgado imparcialmente por un jurado para que rinda un veredicto de acuerdo con la prueba y siguiendo las instruc·ciones de la corte. Sin embargo, no tenemos una transcripción correcta de la instrucción de la corte tratando de borrar ·de las mentes de los miembros del jurado la impresión, si ·alguna, que hubieran podido causar las palabras del fiscal al injertar en el informe su posición oficial que nada tenía que ·ver con la prueba del caso, toda vez que el taquígrafo-repórter ·no tomó las notas taquigráficas de dicha instrucción. Al no hacerlo se violó un derecho fundamental del acusado—*Pueblo* v. *Colón,* supra—y *procede la revocación de la sentencia apelada y la concesión de un nuevo juicio.*