EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTO-
NIO R. VÉLEZ, acusado y apelante.

Número 15729.

*Sometido:* 3 de diciembre de 1954. *Resuelto:* 12 de enero de 1955.

*Charles H. Juliá y Santos P. Amadeo,* abogados del apelante; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *Rafael L. Ydrach Yordán, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL·JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

El fiscal formuló acusación contra Antonio R. Vélez Meléndez por el delito de perjurio, fundado en que mientras éste "era interrogado como testigo por el suscribiente en la investigación de los casos de El Pueblo de Puerto Rico v. Antonio Burgos Dávila, P. I. 1245, por los delitos de asesinato en segundo grado y atentado a la vida, habiendo . . . jurado testificar, declarar y decir la verdad . . . ilegal, voluntaria, maliciosa y corruptamente y contrario a dicho juramento . . . declaró bajo juramento ser cierto que 'la víctima Santiago Flores Quintero, atacó al policía insular Antonio Burgos Dávila; que éste cayo al suelo; que Javier Jiménez González corrió hacia el policía Antonio Burgos Dávila y lo atacó descargándole su mano derecha dos veces con un puñal . . . ; que Santiago Flores Quintero estuvo sobre el cuerpo de Antonio Burgos Dávila en el suelo; que el policía Antonio Burgos Dávila hizo los disparos desde el suelo de espaldas al piso; que el policía Antonio Burgos Dávila salió herido en esa transacción de hechos; que el acusado ocupó un puñal en las manos de Javier Jiménez González . . . ; que al policía Antonio Burgos Dávila le corrió sangre por la mano y dedos en el sitio de los hechos; (y) . . . que el Juez de Paz de Loíza, . . . no le tomó juramento en una declaración que dicho acusado prestó ante dicho Magistrado en torno a estos hechos,' a sabiendas y conociendo la falsedad de estos hechos esenciales e importantes, siendo estos hechos esenciales e importantes en la investigación de los hechos en que resultara muerto Santiago Flores Quintero y herido Javier Jiménez González, por disparos que les hiciera el policía Antonio Burgos Dávila, . . ." Fundado en alegaciones similares, el fiscal también acusó a Fermín

Martínez del delito de perjurio. Los casos se vieron conjuntamente y el jurado rindió veredicto condenatorio contra Vélez Meléndez y absolutorio en favor de Martínez. El tribunal a quo sentenció al primero a sufrir una pena indeterminada de uno a cinco años de presidio, que dejó en suspenso, y absolvió al segundo. No conforme, Vélez Meléndez apeló para ante este Tribunal.

El primer error que señala en apelación es que "el juez sentenciador cometió error al no ordenar al taquígrafo que tomara taquigráficamente el informe de los fiscales al jurado, lesionando así los derechos del acusado-apelante." Al discutir este error el apelante se basa principalmente en la sec. 3 de la Ley de 10 de marzo de 1904 (pág. 110), "Creando las Plazas de Taquígrafos Repórters de los Tribunales de Distrito, . . ." preceptiva de que:

"Dichos taquígrafos deberán tomar correctamente en taquigrafía todos los procedimientos orales que ocurren en dichos tribunales y las declaraciones tomadas en todos los casos que se vean ante dichos tribunales; mas las partes, con el consentimiento del juez, pueden renunciar al derecho de que dicho taquígrafo tome en taquigrafía cualquiera de dichos procedimientos o declaraciones."

Es de conocimiento general que en las causas criminales que se ventilan ante nuestros tribunales superiores, los taquígrafos repórters nunca toman taquigráficamente los informes que—luego de terminada la prueba oral y antes de que el juez trasmita sus instrucciones al jurado—hacen tanto el fiscal como la defensa. Lo mismo ocurre en la mayoría de los estados de la unión americana y en las cortes federales. De esa práctica podemos tomar conocimiento judicial. Si un acusado desea que esos informes sean tomados taquigráficamente, debe solicitarlo así del tribunal de manera expresa. (¹)

---

(¹) El art. 356 del Código de Enjuiciamiento Criminal, según fué enmendado por la Ley núm. 4 de 18 de abril de 1925 (pág. 109) dispone entre otras cosas, que dentro de los 10 días de archivada una apelación, el apelante puede preparar una exposición del caso, así como que en lugar de ésta puede preparar la transcripción de evidencia, la que contendrá "una trans-

De lo contrario, su silencio a ese respecto puede interpretarse como una renuncia a tal derecho.

En el caso específico que nos ocupa, de los autos no aparece que el taquígrafo tomara los informes de la defensa y del fiscal. Tampoco aparece que la defensa así lo solicitara expresamente. El récord guarda silencio sobre el particular. Empero, de la transcripción taquigráfica que está ante nos surge que mientras el fiscal informaba ante el jurado ocurrió lo siguiente:

"Lcdo. Juliá (abogado del acusado Vélez Meléndez). Vamos a pedir se tome por el taquígrafo esa última manifestación del fiscal.

"Hon. Juez: Hágala constar.

"Lcdo. Juliá: El fiscal dirigiéndose al acusado Vélez Meléndez hace manifestaciones de 'si es que el acusado también se considera bandido.'

"Fiscal Viera: Yo estoy haciendo un argumento Sr. Juez, de que en la declaración . . . de Antonio R. Vélez Meléndez que el mismo acusado hace suya como pieza de evidencia, dice refiriéndose a Santiago Flores en la última línea, (cita).(²)   Sin embargo él trajo prueba de que había sido convicto de un delito y que esa convicción era mucho antes que Vélez Meléndez prestara su declaración. Yo pregunto, cómo lo va a tachar a Santiago Flores Quintero de malo cuando él está diciendo que es como un hermano o padre de él, sin tener relaciones familiares. Yo digo ahora, como argumento, 'o será que él considera a Santiago Flores como un bandido y se considera a sí mismo un bandido.' Es como un argumento."

---

cripción de las declaraciones ofrecidas y tomadas, de las pruebas ofrecidas y practicadas y de todas las resoluciones, actos o manifestaciones de la corte, así como de todas las objeciones y excepciones del fiscal del distrito y del abogado del acusado, y cuestiones o materias que con la misma se relacionan." Dicho artículo no hace mención específica de los informes del fiscal y la defensa.

(²) En la declaración jurada prestada por Vélez Meléndez ante el fiscal de distrito con fecha 5 de abril de 1951 aparece lo siguiente:

"P.—¿Cuando caminaba hacia la calle Palmer ocurrió algo?

"R.—Sí, señor. Venía saliendo Santiago Flores.

"P.—¿Lo conocía?

"R.—Personalmente, son como padre y hermano mío."

Como hemos visto, tan pronto la defensa solicitó del tribunal que se hicieran constar las manifestaciones del fiscal, aquél así lo ordenó, accediendo de ese modo a la solicitud héchale al efecto por la defensa.  Es de presumirse que si la defensa hubiera solicitado de la corte que ordenara al taquígrafo que tomara cualquiera otra parte del informe del fiscal, o la totalidad del mismo, la corte así lo hubiera ordenando. Véase *Pueblo* v. *Velázquez*, 72 D.P.R. 42.  Bajo las circunstancias, no creemos que los derechos del acusado fueran perjudicados en forma alguna.  Además éste no nos ha demostrado que al actuarse en la forma en que se actuó él sufriera perjuicio alguno.  *Cf. Pueblo* v. *Vega*, 70 D.P.R. 820, 822.

■■ Alega asimismo el acusado que la corte sentenciadora erró "al no trasmitir . . . las instrucciones especiales al jurado."  La única instrucción especial solicitada por la defensa fué la siguiente "si los señores del jurado tienen duda razonable en cuanto a si los acusados falsearon, a sabiendas, hechos esenciales, conociendo la falsedad de los hechos, esenciales o no, entonces es el deber de ustedes el darle a los acusados el beneficio de esa duda y absolverles del delito que se les imputa."  La instrucción así solicitada fué denegada por el tribunal.  Tampoco creemos que este error fué cometido. Las instrucciones generales dadas por el tribunal, según veremos, fueron amplias y comprendían a cabalidad la especial solicitada por la defensa. Véase *Pueblo* v. *Ramírez*, 50 D.P.R. 234.  Dichas instrucciones generales fueron, en lo pertinente, las siguientes:

"El delito de perjurio según está definido en nuestras leyes se comete por una persona, cuando ésta habiendo jurado testificar, declarar, deponer o certificar la verdad ante cualquier tribunal, funcionario o persona competente para administrar juramentos, en cualquiera de los casos que la ley permitiere tomar tal juramento, maliciosamente y en oposición a dicho juramento declarare ser cierto cualquier hecho esencial, conociendo su falsedad.

"    .     .     .     .     .     .     .     .

"El delito de perjurio puede cometerse de dos maneras: Primero: prestando juramento y declarando como cierto un hecho

esencial, conociendo la falsedad de ese hecho, o Segundo: prestando juramento de ser cierto un hecho esencial cuya certeza no le consta al declarante, o sea que equivale a declarar un hecho que le consta ser falso.

"En todo caso de perjurio deberá demostrarse cuál es el hecho concreto y esencial que se imputa al acusado haber jurado ser cierto conociendo su falsedad, o haber jurado ser cierto ignorándolo. Si el hecho que se jure ser cierto no es esencial al caso, no existe el delito de perjurio. O sea, no es esencial al caso que se está investigando, sino al caso que estaba investigando el fiscal el día de los hechos. Para determinar si hay o no delito de perjurio no basta con probar que lo que dijo el acusado es mentira, sino que, además es necesario probar, demostrar fuera de duda razonable que dijo esa mentira con malicia y corruptamente con el propósito de engañar y que fué sobre un hecho material y esencial.

". . . . . . . ."

"La corte les instruye que los hechos deben realizarse de una manera voluntaria, que no deben ser producto ni del engaño ni del error. Es necesario que cuando la persona contra quien se está imputando un delito de perjurio declara hechos que se alega eran inciertos los haya declarado a sabiendas de que esos hechos eran falsos y además voluntariamente, o sea con malicia y corruptamente con el propósito de engañar, no por error o inadvertencia. Eso quiere decir que a veces se dice una cosa que no es cierta creyendo que se está diciendo la verdad y en ese caso no existe el delito de perjurio, porque se requiere que se cometa con malicia, o sea, una equivocación no es un perjurio.

". . . . . . . ."

". . . Si encuentran ustedes que por el resultado de la evidencia admitida por la corte, Antonio R. Vélez Meléndez, en el sitio y la fecha que dice la acusación declaró bajo juramento lo que se dice en dicha acusación en forma como se los he dicho antes y lo hizo con el propósito de engañar, siendo mentira lo que dijo al Fiscal de Distrito bajo juramento y lo hizo con malicia y voluntariamente; todo eso lo creen ustedes fuera de toda duda razonable, entonces es el deber de ustedes declarar a Antonio R. Vélez Meléndez culpable del delito de perjurio (*felony*)."

El tribunal también explicó al jurado con amplitud qué se entiende por duda razonable y les indicó que en caso de existir tal duda debían absolver al acusado.

Por otro lado, de los autos elevados no surge que la defensa hiciera objeciones específicas a las instrucciones trasmitidas, dando de ese modo oportunidad al tribunal sentenciador para corregirlas, en caso de ser ello necesario. Véanse *Pueblo* v. *Martínez*, 50 D.P.R. 781 y *Pueblo* v. *Defilló*, 58 D.P.R. 452.

■ También insiste el apelante en que "el veredicto del jurado es nulo por ser un veredicto de transacción, ya que con la misma prueba el jurado absolvió al coacusado Fermín Martínez." En los autos no hay el menor indicio de que el veredicto rendido haya sido uno obtenido mediante transacción. Lo que sí se desprende de la prueba es que en la noche del 31 de marzo de 1951 el policía Antonio Burgos Dávila, mientras prestaba servicios en el pueblo de Canóvanas, hizo varios disparos de armas de fuego, dió muerte a Santiago Flores Quintero e hirió a Javier Jiménez González. Se le acusó por ello de varios delitos. Tanto a Vélez Meléndez como a Fermín Martínez, quienes eran policías insulares, se les tomaron declaraciones juradas y ambos lo hicieron en forma parecida a las alegaciones que figuran en la acusación arriba copiada. La prueba de cargo tendió, sin embargo, a demostrar que Martínez se hallaba en el lugar de los sucesos al momento en que se hicieron los disparos y que Vélez Meléndez se encontraba en ese momento a bastante distancia, hablando con un tal Budet sobre un gallo de peleas. Con esta prueba ante sí el jurado pudo muy bien concluir, como concluyó, que Vélez-Meléndez era culpable del delito de perjurio, y que a Martínez debía absolvérsele. No vemos por qué por actuarse en esa forma puede alegarse con razón que los veredictos rendidos fueron el resultado de una transacción. *Cf. Pueblo* v. *Negrón*, 73 D.P.R. 559.

■ Finalmente sostiene el apelante que "el veredicto del jurado es contrario a la prueba, ya que la misma no demuestra que el acusado era culpable más allá de toda duda razonable." La prueba que tuvo ante sí el jurado fué bastante extensa y el estudio que hemos hecho de la transcripción de evidencia

nos convence de que en los autos hay suficiente prueba para servir de apoyo al veredicto rendido. *Pueblo* v. *Nicole,* 71 D.P.R. 866 y *Pueblo* v. *Millán,* 71 D.P.R. 440.

*Debe confirmarse la sentencia apelada.*