EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL ROSARIO VEGA, acusado y apelante.

Número 16096.
*Sometido:* 12 de mayo de 1958. *Resuelto:* 31 de julio de 1958.

*José R. Fournier,* abogado del apelante; *Hon. Secretario de Justicia J. B. Fernández Badillo (José Trías Monge, ex-Secretario de Justicia, Arturo Estrella* y *Ramón C. Ruiz Sánchez, ex-Fiscal* y *ex-Fiscal Auxiliar, respectivamente, del Tribunal Supremo,* en el alegato)*,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Rafael Rosario Vega fué sentenciado a cumplir la pena de uno a cinco años de presidio por la comisión de un delito de Abuso de Confianza (*felony*) consistente en que dicho acusado, "en el período comprendido entre julio 1 a diciembre 31, 1952, ambas fechas inclusive, en Cataño, Puerto Rico, . . . ilegal, voluntaria, maliciosa y criminalmente y con intención de defraudar, sustrajo para sí y malversó la suma de Ciento Cuarentisiete Dólares con Veintitrés Centavos ($147.23), cantidad que le fuera entregada en moneda de los Estados Unidos de América por los empleados y jornaleros del Municipio de Cataño, Puerto Rico, en concepto de sus aportaciones al Fondo del Seguro Social Federal . . . para que el aquí acusado hiciera efectivo el pago de la antes mencionada suma de dinero a dicho Fondo del Seguro Social Federal, habiéndose el mencionado Rafael Rosario Vega apropiado en su propio beneficio de dicha suma de dinero . . . defraudando así a dichos jornaleros y empleados del Municipio de Cataño en la mencionada suma de Ciento Cuarentisiete Dólares con Veintitrés Centavos ($147.23)."

De la prueba de cargo, única presentada en el juicio, surge que el acusado era Secretario-Auditor del Municipio de Cataño. En el período comprendido en la acusación varios em-

pleados de dicho municipio entregaron al acusado pequeñas sumas de dinero para ser aplicadas al pago del Seguro Social Federal. Dolores Rivera Figueroa pagó $3.15 que le fué descontado de su sueldo por la Tesorera del Municipio, Pedro Montañez entregó al acusado $6.75; Carmen Cardin le entregó $7.20; Basilio Meléndez López le entregó $2.75; Salvador Rivera Ortiz le entregó $3.60 y $1.50 más; Pedro Rodríguez Morales pagó su Seguro Social Federal directamente al acusado pero no recuerda la cantidad que le entregó; Etanislao Mojica le entregó $2.67. Eloísa Urbiztondo era la Tesorera del Municipio y la encargada de pagar los sueldos a los empleados. Según su testimonio, en octubre, noviembre y diciembre descontó del sueldo de dichos empleados 1.5% por concepto del Seguro Social Federal. La cantidad así descontada, ascendente a $75 le fué entregada al acusado aunque no recuerda qué parte de dicha cantidad le entregó antes de diciembre 31 de 1952 y qué parte le entregó después de esa fecha. Gabriel Sicardo Rosario sustituyó en funciones al acusado como Secretario-Auditor del Municipio de Cataño el día 16 de enero de 1953. Declaró que al comenzar a desempeñar sus funciones no se había creado en los libros del Municipio un fondo para el seguro social ni había en los fondos del Municipio dinero alguno para el pago del seguro social y que tampoco había guardado algún dinero en el banco o en algún otro sitio destinado a ese fin. Declaró además que se entrevistó con el acusado y éste le dijo que (el acusado) había tomado para sí durante el período de julio 1 a diciembre 31 de 1952, entre $100 y $147 pertenecientes a los empleados del Municipio y procedente de sus aportaciones al Seguro Social, y que esa cantidad la iba a reponer con un dinero que el Municipio le debía. Finalmente declaró este testigo que el acusado no ha repuesto la indicada cantidad.

No surge en qué capacidad fue que el acusado se convirtió en depositario de los fondos destinados al Seguro Social Fede-

ral. Sin embargo, no hay controversia en cuanto a que los fondos malversados pertenecían a los empleados y que no eran fondos públicos.

En apelación, el acusado imputa al tribunal sentenciador, como único error, haberle declarado culpable del delito de abuso de confianza (*felony*) y haberle sentenciado de acuerdo con esta convicción. Su teoría es que de la prueba presentada por el Fiscal no resulta que las malversaciones hechas por él fueran individualmente de más de $100. Alega que aun aceptando que la suma total de todas las malversaciones fuera mayor de $100, él no podía ser condenado por un delito grave (*felony*) de abuso de confianza porque ninguna de las malversaciones separadamente era por una cantidad mayor de $100. Sostiene que no pueden agruparse todas las transacciones para así imputarle la comisión de un delito grave (*felony*) y que de acuerdo con la prueba presentada a lo sumo puede ser condenado por uno o más delitos menos grave (*misdemeanor*) de abuso de confianza.

■■ No tiene razón. Constituye el delito de abuso de confianza "la fraudulenta sustracción o malversación de bienes, por una persona a quien habían sido confiados." Art. 445 del Código Penal (33 L.P.R.A., sec. 1721). Y de acuerdo con el art. 455 del mismo Código (33 L.P.R.A., sec. 1731) "[T]odo reo de abuso de confianza será castigado en la forma prescrita para la sustracción de bienes del valor de la cosa apropiada . . . ." La sustracción de bienes la clasifica el Código Penal y dispone para su castigo en la siguiente forma:

"Hurto de mayor cuantía es el que se comete en cualquiera de los casos siguientes:

"1. Cuando el valor de la propiedad sustraída es de cien dólares o más.

"2. Cuando la propiedad es sustraída de la persona."

(Art. 428 Código Penal, 33 L.P.R.A., sec. 1683.)

El hurto de mayor cuantía se castiga con pena de presidio y es, por tanto, un delito grave (*felony*). Art. 430 del Código Penal (33 L.P.R.A., sec. 1685). En los demás casos de

hurto es de menor cuantía y se castiga con multa o cárcel, o ambas penas. Es por lo tanto, un delito menos grave (*misdemeanor*). Arts. 429 y 431 del Código Penal (33 L.P.R.A., secs. 1684 y 1688, respectivamente).

La diferencia fundamental entre el delito de abuso de confianza y el de hurto consiste en que en el primero los bienes llegan a poder del acusado legalmente mientras que en el segundo entran en su posesión ilegalmente. En el de abuso de confianza el delito se comete después de estar los bienes legalmente en la posesión del acusado, o sea, en el momento de la malversación fraudulenta. Por el contrario en el de hurto el delito se comete en el momento mismo de la sustracción. *Pueblo* v. *Ríos*, 69 D.P.R. 830; *Pueblo* v. *Díaz*, 23 D.P.R. 257; *Pueblo* v. *Kent*, 10 D.P.R. 343.

▆▆▆ El hecho de que los fondos malversados fueran recibidos por el acusado en distintas ocasiones y en diferentes cantidades, no determina si dicho acusado cometió uno o varios delitos de abuso de confianza pues tal determinación depende de las apropiaciones o malversaciones fraudulentas que haga. Varias apropiaciones o malversaciones fraudulentas cometidas en diferentes fechas y en las cuales están envueltas distintas sumas de dinero, si son transacciones separadas y distintas y las apropiaciones no obedecen a un mismo designio, a un mismo fin o a un mismo impulso, entonces cada transacción constituye un delito separado de abuso de confianza. *People* v. *Hatch*, 109 Pac. 1097; *People* v. *Stanford*, 105 P.2d 969; *People* v. *Hewlett*, 239 P.2d 150.

En el caso de autos la prueba no demuestra si el acusado se apropió de los fondos de una sola vez o en diferentes ocasiones y distintas partidas. Todo lo que sabemos es que se apropió fraudulentamente la totalidad de dichos fondos.

En *Pueblo* v. *Pérez*, 47 D.P.R. 765, 783, dijimos:

"Lo que sucede es que teniendo que enfrentarse los legisladores y las cortes con un delito generalmente cometido por personas expertas en contabilidad que hacen muy difícil la fijación de la exacta fecha de cada una de las apropiaciones del desfalco

final que se descubre, se ha permitido que se acuse por una serie de apropiaciones como si todas constituyeran un solo delito. . . . ."

La regla general adoptada por la mayoría de las cortes de los Estados Unidos de América, incluyendo las de California, es al efecto de que la malversación de fondos en pequeñas cantidades pertenecientes a una sola persona, a través de un período de tiempo, si responde a un solo plan o designio, constituye un solo delito. *People* v. *Fleming*, (Cal.), 32 P.2d 593; *People* v. *Cox*, 36 N.E.2d 84, 86 (N. Y., 1941); *Willis* v. *State*, 33 So. 226, 233–34 (Ala., 1926); *Craig* v. *State*, 116 So. 272 (Fla., 1928); *Norman* v. *State*, 160 S. E. 522 (Ga., 1931); *Camp* v. *State*, 122 S. E. 249 (Ga., 1924); *State* v. *Peters*, 253 Pac. 842, 844 (Idaho, 1927); *State* v. *Dawe*, 177 Pac. 393, 395–396 (Idaho, 1918); *People* v. *Heilemann*, 199 N. E. 792 (Ill., 1935); *State* v. *Shour*, 95 S. W. 405, 408–409 (Mo., 1906); *State* v. *Pratt*, 11 S. W. 977, 978–979 (Mo., 1889); *Bolln* v. *State*, 71 N. W. 444, 448 (Neb., 1897); *State* v. *Bickford*, 147 N. W. 407, 417–418 (N. D., 1913); *Brown* v. *State*, 18 Ohio St. 497, 513–514 (1869); *Young* v. *State*, 184 N. E. 24 (Ohio, 1932); *Moore* v. *State*, 50 P.2d 746, 750–752 (Okla., 1935); *Fulkerson* v. *State*, 189 Pac. 1092, 1101 (Ore., 1920); *State* v. *Reinhart*, 38 Pac. 822, 826–827 (Ore., 1895); *State* v. *Gibson*, 108 Pac. 349 (Utah, 1910); *State* v. *Linden*, 17 P.2d 635, 639 (Wash., 1932); *State* v. *Dix*, 74 Pac. 570, 571–572 (Wash., 1903); *State* v. *Wetzel*, 83 S. E. 68, 72–73 (W. V., 1914); *State* v. *Moyer*, 52 S. E. 30, 35 (W. Va., 1905).

*En People* v. *Fleming*, supra, el acusado era presidente de una corporación autorizada para hacer negocios de corretaje de valores. Se le acusó de abuso de confianza (*felony*) consistente en que, según el primer cargo, se apropió ilegalmente el 2 de mayo de 1930, de 10 acciones de la Chrysler Motor Corp. valoradas en $591.25 pertenecientes al Sr. Stewart, y según el segundo cargo, se apropió ilegalmente, el 3 de mayo de 1930, de 10 acciones de la misma corporación valoradas en $500 pertenecientes a la Sra. Stewart. Los Stewart habían

hecho un arreglo con el acusado para comprar a plazos las referidas acciones. Cuando terminaron de pagar todos los plazos, las acciones no le fueron entregadas. A pesar de que el precio total excedía de $200, la contención del acusado era que como ninguno de los plazos excedía de esa cantidad, él era culpable de un delito menos grave (*misdemeanor*) y no de un delito grave (*felony*). La corte se expresó así:

"Aparece, sin embargo, que estos pagos de plazos sucesivos hechos a un único contrato equivalía a más de $200 hechos a cada contrato. El momento exacto en que la apropiación fraudulenta quedó completa es inmaterial, y quizás no está establecida por la evidencia, más allá de que los plazos se pagaron en ciertos momentos específicos y que las acciones no se entregaron al completarse los pagos y llegar el momento de su entrega. Creemos que el caso lo rige la regla expuesta en *People* v. *Mills B. Sing*, 42 Cal. App. 385, 396, 183 P. 865, 869, en el cual se dijo: 'Es la ley que si las diferentes remociones fraudulentas de bienes del mismo dueño las impulsan un mismo designio, un mismo fin, un mismo impulso, ellas son un solo acto, independientemente del momento en que se hicieron.' O como se dijo en *People* v. *Hatch*, 13 Cal. App. 521, 534, 109 P. 1097, 1103: 'Puede ocurrir que la suma total de varias cantidades recibidas en diferentes partidas y en diferentes momentos pueda ser finalmente apropiada mediante un solo acto.' "

La doctrina se expone en *State* v. *Noland*, 19 S. W. 715, 722, así:

"La relación fiduciaria permite al funcionario apropiarse fraudulentamente fondos y valores para su propio uso a la vez que hace casi imposible que el Estado pueda, de antemano, imputar cuándo y cómo ello se hizo. El abuso de confianza a veces consiste de una serie de actos ejecutados en ocasiones distintas pero con un designio común; y al final aparece el hecho de que algo falta. Lo más que puede decirse es que hay un déficit; que los fondos públicos han sido apropiados hasta cierta cantidad. Exigirle al Estado que seleccione uno cualquiera de los hechos y elija hacer un caso de ese solo hecho muchas veces resultaría desastroso y el crimen podría quedar sin castigo. Por consiguiente, cuando al acusado se le informa de que se le imputa un déficit, de la suma reclamada, del carácter oficial en que él la

recibió, y de su apropiación fraudulenta, él tiene información de la naturaleza y causa de la acusación. En este caso al acusado se le informó que el Estado le imputaba el haberse apropiado $32,745.39; que esos fueron dineros que él había recibido por razón de su cargo como Tesorero del Estado; que este déficit lo demostrarían los libros de su oficina; que la prueba de uno u otro de los cargos imputados envolvía la prueba de todos ellos y que la prueba de todos sería necesaria para probar uno de ellos; que ello fué sustancialmente una sola transacción. En el orden natural de las cosas, tan sólo él podría explicar lo que hizo con el dinero. Es cierto que el Estado trazó tres sumas distintas de dinero que llegaron a manos del acusado, pero por lo que aparece de los autos, ésta se las apropió fraudulentamente en una sola ocasión. El recibo [del dinero] es una cosa, la apropiación fraudulenta es otra. Decir que por el mero hecho de que el ministerio fiscal hizo la imputación en tres cargos distintos ello hace que hay tres delitos distintos es, en nuestra opinión, darle al estatuto una interpretación no factible."

La imposibilidad de probar la fecha exacta de cada apropiación o malversación fraudulenta, como ha ocurrido en el caso de autos, justifica la necesidad de adoptar la doctrina de las cortes americanas al efecto de una serie de pequeñas malversaciones, cuando responden a un plan o designio común, constituyen un solo delito de abuso de confianza.[1]

La doctrina no cambia por el hecho de que el dinero malversado pertenecía a varias personas y no a una sola de ellas. Algunos casos sostienen que se cometen tantos delitos como víctimas del desfalco haya. Véase 32 Am. Jur. 892 y casos coleccionados en 31 A.L.R. 693, 723 y 42 L.R.A. 967. Para llegar a esta conclusión establecen una analogía con el derecho civil y la responsabilidad civil del desfalcador. Sin embargo, el peso de las autoridades la rechaza. Así en *Henry* v. *United States*, 263 Fed. 459, 462–463, se dijo:

---

[1] No tenemos dudas de que las apropiaciones fraudulentas hechas por el acusado en este caso respondieron a un plan o designio común. Así lo pone de manifiesto la admisión hecha por el acusado a uno de los testigos de cargo, en el sentido de que él se había apropiado de los fondos destinados al Seguro Social con la idea de reponerlos con un dinero que le debía el Municipio.

"Al acusado le imputan dos delitos basados en un solo acto de apropiación fraudulenta. La teoría del gobierno es que toda vez que una parte de las acciones pertenecía a John Helmus y otra parte pertenecía a su mamá, aun cuando fueron apropiadas fraudulentamente mediante un solo acto, la propiedad de ellas establece dos delitos independientes. No es esa la ley en esta jurisdicción. En el caso de *Hoiles* v. *United States,* 3 Mac Arthur, 370, 36 Am. Rep. 106, en el cual un acusado fué convicto y sentenciado por tres hurtos diferentes debido a que los bienes hurtados pertenecían a tres personas distintas, pero se hurtaron del mismo cuarto y al mismo tiempo, la corte dijo:

" 'Todos los jueces que oyeron los argumentos son de opinión de que cuando el hurto consiste de un solo acto, y los bienes hurtados pertenecen a distintas personas, es innecesario formular acusaciones separadamente por el fiscal o el gran jurado, y que en ese caso sólo puede haber una sola convicción y sentencia.'

"La comisión de un delito es una ofensa en contra del público, y se castiga, no para proteger derechos de propiedad del perjudicado y sí para vindicar el estatuto público. El nombre del dueño aparece en una acusación del gran jurado (*indictment*) con objeto de identificar la propiedad de los bienes que han sido robados o fraudulentamente apropiados.

"La propiedad de bienes en particular que son objeto de un hurto no cae dentro de la definición ni va a la esencia del delito. La médula de la ofensa consiste en apropiarse criminalmente la propiedad de otro; y ni la cualidad legal ni moral del acto en forma alguna la afecta el hecho de que la cosa hurtada, en vez de ser propiedad de una persona o de dos o más conjuntamente, sea la propiedad separada de distintas personas. La propiedad en particular de la cosa se imputa en el *indictment* no para caracterizar al acto de la incautación y sí tan sólo a modo de descripción del delito específico. *State* v. *Hennessey,* 23 Ohio St. 339, 13 Am. Rep. 253.

"El peso abrumador de las autoridades sostiene el principio de que el hurtar o el apropiarse fraudulentamente bienes pertenecientes a distintas personas al mismo tiempo y en el mismo sitio constitutye tan sólo un delito, y como tal debe ser perseguido. *Dalton* v. *State,* 91 Miss. 162, 44 So. 802, 124 Am. St. Rep. 637; *State* v. *Warren,* 77 Md. 121, 26 Atl. 500, 39 Am. St. Rep. 401; *Clemm* v. *State,* 154 Ala. 12, 45 So. 212, 129 Am. St. Rep. 17; *State* v. *Clark,* 46 Or. 140, 80 Pac. 101; *People* v.

*Johnson,* 81 Mich. 573, 45 N. W. 1119; *State* v. *Larson,* 85 Iowa 659, 52 N. W. 539; *State* v. *Congrove,* 109 Iowa 66, 80 N. W. 227; *State* v. *Mickel,* 23 Utah 507, 65 Pac. 484; *State* v. *Emery,* 68 Vt. 109, 34 Atl. 432, 54 Am. St. Rep. 878; *State* v. *Mjelde,* 29 Mont. 490, 75 Pac. 87; *Furnace* v. *State,* 153 Ind. 93, 54 N. E. 441; *Wilson* v. *State,* 45 Tex. 76, 23 Am. Rep. 602; *Ackerman* v. *State,* 7 Wyo. 504, 54 Pac. 228; *State* v. *Morphin,* 37 Mo. 373."

*Por todo lo expuesto concluimos que el error señalado no fué cometido y en su consecuencia la sentencia apelada será confirmada.*