EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL IRLANDA RIVERA, acusado y apelante.

*Número:* CR-64-455          *Resuelto:* 14 de octubre de 1965

---

[1] Véase además, *Jackson* v. *United States,* 34 U.S.L. Week 2153 y *Powell* v. *United States,* 34 U.S.L. Week 2129.

*William. Morales Torres,* abogado del apelante; *Rodolfo Cruz Contreras, Procurador General Interino, y Nilita Vientós Gastón, Procuradora General Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

Acusado y convicto del delito de hurto mayor, el apelante Rafael Irlanda Rivera fue condenado a la pena de uno a tres años de presidio. En apelación señala que el tribunal sentenciador incurrió en error al condenarle ya que el veredicto es contrario a derecho y a la prueba presentada. Sostiene que existen tales discrepancias en la prueba que ello ha debido dar lugar a que surgiera una duda razonable sobre su culpabilidad. Además, como segundo error, señala que, de todos modos, la propiedad consistente de un billete de $500 no la tomó contra la voluntad o sin el consentimiento de su legítimo dueño.

De acuerdo con el Art. 426 del Código Penal, 33 L.P.R.A. sec. 1681, hurto es el acto de sustraer, con intención criminal, bienes muebles o semovientes, pertenecientes a otra persona. Hemos resuelto que este delito se comete en el momento mismo de la sustracción, de manera que la sustracción puede ser por breves instantes; que la mera posesión de la propiedad por el acusado no es suficiente pero que la misma,

unida a otras circunstancias, puede serlo; que la intención de privar permanentemente al dueño de la propiedad hurtada puede inferirse de las circunstancias concurrentes; que no es necesario que la persona de quien se hurtó tenga el dominio de los bienes ni aun el derecho a su posesión ni que el encausado tenga conocimiento de la identidad del dueño; que el apoderamiento de la cosa sustraída es el elemento esencial del delito. *Pueblo* v. *Rosario*, 80 D.P.R. 624 (1958); *Pueblo* v. *López*, 42 D.P.R. 975 (1931); *Pueblo* v. *Laguer*, 42 D.P.R. 915 (1931); *Pueblo* v. *Nieves Alvelo*, 89 D.P.R. 47 (1963); *Pueblo* v. *Meléndez*, 64 D.P.R. 825 (1945); *Pueblo* v. *Acevedo*, 43 D.P.R. 340 (1932); *Pueblo* v. *Domínguez*, [1] 36 D.P.R. 463 (1927); *Pueblo* v. *Santiago*, 28 D.P.R. 234 (1920). Aunque es necesario probar que la sustracción se realizó en contra de la voluntad del dueño de la propiedad o sin su consentimiento, el hecho de que el acusado se apropie de una propiedad extraviada para sus propios fines constituye hurto. Constituye hurto, también, la sustracción de bienes no obstante el acatamiento pasivo del dueño, siempre y cuando que (1) éste no indique un deseo de que los bienes se tomen; (2) el acusado ignore el deseo del dueño; (3) no exista acuerdo entre ambos sobre la apropiación; y (4) haya ausencia de gestiones por parte del dueño para inducir la sustracción. Wharton's *Criminal Law* (Anderson Ed.), Vol. 2, sec. 461 pág. 99; *People* v. *Hanselman*, 76 Cal. 460 (1888); *Carnes* v. *State*, 113 S.W.2d 542 (Texas 1938); *People* v. *Frank*, 27 N.Y.S.2d 227 (1941); *Hagan* v. *State*, 134 P.2d

---

[1] El hecho de la posesión más la venta o empeño del objeto hurtado o el tratar de realizar una de estas gestiones, más cualquier breve corroboración de cualquier otra circunstancia inculpatoria que tienda a demostrar la culpabilidad del acusado, es suficiente para sostener una convicción de hurto. *People* v. *Gibson*, 116 Pac. 987 (Cal. 1911); *People* v. *Farrell*, 227 Pac. 210 (Cal. 1924); *People* v. *Crotty*, 233 Pac. 395 (Cal. 1925); *People* v. *Rutland*, 261 P.2d 735 (Cal. 1953); *People* v. *Lancelloti*, 305 P.2d 926 (Cal. 1957); *People* v. *Ransome*, 180 C.A.2d 140 (1960); *People* v. *Phelps*, 192 C.A.2d 12 (1961); *People* v. *Ford*, 200 C.A.2d 905 (1962).

1042 (Okl. 1943); *People* v. *Fenton*, 141 C.A.2d 357, 360 (1956).

A los efectos de considerar los errores apuntados hacemos a continuación un resumen de la prueba que consistió del testimonio de Santos Ortiz Cartagena, dueño del cafetín en Orocovis donde ocurrieron los hechos del caso y los concurrentes a dicho establecimiento en la noche de los hechos: Saulo M. Jiménez, Administrador de Correo en el referido pueblo, Ángel Miranda Colón, Antonio Pérez y Jesús M. Pérez, y el policía Pedro Rodríguez Ramírez.

Declaró Ortiz que vio al apelante en su cafetín entre las 11:00 y 12:30 de la noche del 12 de diciembre de 1960 sentado frente a la barra junto con los otros concurrentes mencionados; que el testigo los atendió desde el otro lado de la barra; que Antonio Pérez le propuso comprarle la vellonera por $500 a lo que el testigo contestó que "mañana hacemos el negocio"; que Pérez salió a buscar el dinero y a los cinco minutos regresó con un billete de $500 en la mano; que como Ortiz no tomó el billete, Pérez se lo pasó a Jiménez; que éste lo puso sobre la barra diciendo que si Ortiz no hacía el negocio no lo iba a dejar allí; que Pérez dijo que tenía que tomarlo; que entonces el apelante tomó el billete, le dio vuelta en la mano, le dio varios dobleces y se lo echó al bolsillo de la camisa debajo del "*sweater*" sin mangas que llevaba puesto; que Jiménez requirió al apelante que entregase el billete a Pérez a lo que contestó aquél "eso es broma", que no lo tenía; que Jiménez le dijo a Pérez "broma no. Entréguele el billete que Ud. mismo lo cogió"; que el apelante contestó que no lo tenía y entonces Jiménez mandó a Jesús Pérez a buscar al policía; que el apelante salió del establecimiento a pesar de que se le requirió que no lo hiciera hasta que llegase el policía; que cuando llegó éste, Jiménez le explicó lo ocurrido y todos fueron al cuartel para la investigación en la que intervino la Juez de Paz de Morovis. En contrainterrogatorio aceptó que tomó el billete de la barra para verlo pues "no siempre se ve un

billete de $500" y lo volvió a poner en la barra; que inmediatamente lo tomó el apelante; que Ortiz también requirió al apelante para que entregara el billete a Pérez porque el negocio no se iba a hacer; que al salir el apelante del cafetín, Miranda le dijo: "Feyo, no vas a sacarte eso. Tú tienes el billete" y que no se fuera hasta que viniera la policía; que cuando vino éste, se buscó el billete por todo el establecimiento y no se encontró.

Saulo Jiménez testificó en forma parecida en cuanto al negocio de la vellonera; que al regresar Pérez de buscar el dinero le entregó a Jiménez el billete de $500 para que se lo pasara a Ortiz por estar Jiménez más cerca de éste; que Ortiz al momento le devolvió el billete porque no iba a hacer el negocio esa noche; que el apelante lo tomó de la barra y el billete desapareció; que en ese momento surgió entre este testigo y el apelante el siguiente diálogo:

"Feyo, ¿y el billete de $500?
"¿Qué billete?
"El de $500.
"Yo lo que tengo aquí es un billete de $2.00".

Entonces Jiménez mandó a buscar al policía; que el apelante se fue antes de llegar el policía, explicando que sólo tenía un billete de dos dólares; que todos fueron al cuartel porque el policía no venía; que éste había ido a buscar al apelante a su casa; no vio al apelante devolver el billete a persona alguna; que la Juez les tomó declaraciones juradas; que él no regresó al cafetín; que Pérez no mandó a buscar al policía para que observara la transacción de la vellonera; estaba afuera en la esquina como a 20 ó 25 pies; se le veía por la vidriera; que al negar el apelante que tenía el billete se buscó por todo el establecimiento y no apareció; que el apelante se fue del cafetín cuando Jiménez envió por la policía, a pesar de que Jiménez dijo que no se fuera nadie para investigar sobre la desaparición del billete.

Ángel Miranda Colón declaró sustancialmente lo mismo que Jiménez. Dijo que al colocar el billete sobre la barra, Ortiz dijo: "mira, entrégale ese billete a Santos . . . a Antonio Pérez. Yo no voy a hacer ese negocio"; que entonces el apelante tomó el billete y lo envolvió. Testificó Miranda lo siguiente: (T.E. págs. 137–138.)

"Se lo procuró al señor [el apelante] y dijo 'no tengo el billete'. Saulo dijo, lo dijo él propio: 'entrégalo, tú lo tienes. Tú lo tienes'. Entonces dijo 'pues hay que mandar a buscar el guardia para hacer la investigación'. Lo buscaron. Entonces el Policía, el Guardia no vino para hacer la investigación. Entonces Santos dijo 'vamos a buscar por aquí para ver si se ha extraviado el billete' . . . . Entonces cogió Saulo (Orta) y dice: 'hay que ir al Cuartel'. Este señor [el apelante] cuando se trató de la investigación, que se mandó a buscar el Guardia, este señor se retiró y se fue. Entonces Saulo dijo: 'No te vayas hasta que venga la Policía para que se haga la investigación'. Yo mismo le dije que no se fuera hasta que se haga la investigación. Sería para hacer la investigación, para ver si aparecía el billete y él cogió y se fue antes de que viniera el guardia."

Dice Miranda que declaró todo esto ante la Juez de Paz y al terminar vino el apelante y le asestó una bofetada; que Ortiz no le entregó las llaves de la vellonera a Pérez, que el apelante tomó el billete de la barra, lo dobló "y se aguantó con él"; "que lo puso en el bolsillo"; que Jiménez entonces procuró el billete; que el guardia vino a hacer la investigación antes de todos ir al cuartel y entonces se buscó el billete por todas partes y no apareció; entonces fueron al cuartel.

Antonio Pérez declaró que compró la vellonera a Ortiz por $500; que fue y buscó el dinero y al volver le entregó el billete de $500 a Jiménez para que se lo pasase a Ortiz; que así se hizo y no supo más; admitió haber declarado ante la Juez, que había oído decir que el apelante había doblado el billete y se lo había echado al bolsillo. Tuvo que ser amonestado por el tribunal por estar cambiando su declaración. Testificó que él trajo al guardia Rodríguez para que presen-

ciara la transacción entre él y Ortiz y luego el guardia se fue y luego se desapareció el billete. El testigo se contradijo en varias ocasiones y además, varió su declaración en varios aspectos.

Por la defensa declaró el policía Pedro Rodríguez Ramírez que estando frente al negocio de Ortiz pudo notar que se estaba llevando a cabo una transacción de venta de una vellonera entre Ortiz y Pérez en un papel en que escribía éste para que Ortiz lo firmara; que Ortiz le entregó las llaves de la máquina en consideración de los $500 que recibió en forma de un billete de esa denominación que Pérez puso sobre el mostrador diciendo: "Santos, aquí están los $500"; que Ortiz le contestó a Pérez: "toma, llévate los $500. Por la mañana voy a hacer el negocio. Hoy no voy a hacer el negocio de la vellonera"; que él se fue al cuartel y que como a 12 ó 15 pasos detrás iba Pérez y como a 35 ó 40 pasos iba el apelante; que este último tomó la dirección del correo y Pérez siguió al cuartel; que Jesús Pérez alcanzó a este guardia en el cuartel y le dijo de afuera lo del asunto del billete de $500; "que el señor Rivera, Irlanda, se había traído el billete de $500"; que fue a casa del apelante y le explicó lo que pasaba y se fue con el apelante al negocio; que allí el apelante se vació los bolsillos en que tenía unos $100, uno de $2, y los demás hicieron igual; que Santos sacó lo que tenía en la registradora; se buscó por el piso; que el billete de $500 no apareció; que entonces fueron al cuartel; que estaba frente al negocio como a 25 pies de donde se llevaba a cabo la transacción de la vellonera; que escribían el papel en una mesa; que Ortiz salió fuera del mostrador; que el papel lo rompieron; que Pérez había identificado el papel como el de la venta al salir a buscar el billete de $500; que Pérez puso el billete sobre la barra; que Jiménez lo cogió y lo entregó a Ortiz; que no sabe qué hizo Ortiz con el billete, pues en eso se fue para el cuartel; declaró que el apelante usaba chaleco y camisa de manga larga

con corbata. El testigo Jesús Manuel Pérez, por el contrario, reafirmó que usaba *"sweater"* y camisa de manga corta y que no usaba corbata.

Al terminar la presentación de la prueba, el juez sentenciador determinó que hubo prueba no controvertida del testimonio de los testigos, que por la forma de declarar y su conducta le merecieron crédito, mencionando al efecto a Ortiz y a Miranda, de que el apelante tomó el billete, lo envolvió en las manos y se lo echó al bolsillo; que no le mereció crédito el testimonio de Pérez por su forma y manera de declarar y por su conducta en la silla y porque varió su testimonio; que tampoco le mereció crédito el testimonio del policía Rodríguez por razones similares.

■ Del testimonio aducido en la vista del caso y previamente relacionado es evidente que el tribunal sentenciador tuvo ante sí prueba directa, creíble y abundante que establece la culpabilidad del acusado más allá de duda razonable y que las discrepancias se limitaron a pequeños detalles no esenciales.

■ No surge de la prueba que el apelante tomara el dinero en cuestión con el consentimiento o conocimiento de su dueño. Quedó establecido que el apelante tomó el billete de $500 del mostrador del cafetín, lo dobló y se lo llevó a un bolsillo de su camisa. Así quedó probado el apoderamiento de la propiedad que es el elemento esencial del delito de hurto. La intención criminal de privar permanentemente al dueño de la propiedad hurtada se infiere del hecho que el apelante no tan sólo introdujo el billete en el bolsillo de su pantalón sino que se negó a devolverlo, a pesar de instársele por varios de los testigos que lo hiciera y se ausentó del establecimiento en violación del requerimiento de que todos permanecieran allí hasta que llegase el policía e iniciase su investigación con respecto a la desaparición del billete. Es cierto que al tomar el apelante el billete ni Ortiz ni Pérez objetaron. Pero su silencio no implica que el dueño del billete consintiese o tu-

viese conocimiento del hurto del referido dinero; primero, porque no era de esperar que el apelante se llevase el billete al bolsillo y lo retuviese, y segundo, porque tan pronto lo hizo, tanto Jiménez, quien en ese momento tenía la custodia del billete, o por lo menos continuó sintiéndose responsable del mismo, como Ortiz, le requirieron en términos claros y terminantes que devolviese el billete, y éste se negó alegando que no lo tenía. Siendo ello así, el error apuntado no fue cometido.

*En vista de lo expuesto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de Ponce, el 13 de agosto de 1963.*

Los Jueces Asociados Señores Santana Becerra y Dávila concurren en el resultado.

