ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br>APELADA(S)<br><br>V.<br><br>**LUIS M. REYES PEÑA**<br>ACUSADA(S)-APELANTE(S) | **KLAN202400510** | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **PONCE**<br><br>Caso Núm.<br>**JEC2024 G0001 (505)**<br><br>Sobre:<br>Art. 127-A C.P. (2012) |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 21 de abril de 2026.

Comparece ante este Tribunal de Apelaciones, el señor **LUIS MANUEL REYES PEÑA** (señor **REYES PEÑA**) mediante *Apelación Criminal* incoada el 24 de mayo de 2024. En su escrito, nos solicita que revisemos la *Sentencia* dictada el 29 de abril de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce.[1] En dicha decisión, se declaró culpable al señor **REYES PEÑA** por violación al Artículo 127-A del *Código Penal de Puerto Rico de 2012* y se le condenó a diez (10) años de cárcel, más dos (2) años y seis (6) meses (por el 25% de reincidencia simple), para un total de doce (12) años y seis (6) meses. Se le eximió del pago de arancel especial de la Ley 243.

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

---

[1] Este dictamen judicial fue notificado y archivado en autos el 2 de mayo de 2024. Véase, Autos originales, págs. 60-62.

## - I –

El 24 de diciembre de 2023, **EL PUEBLO DE PUERTO RICO** presentó una *Denuncia* en contra del señor **REYES PEÑA**, por hechos ocurridos el 23 de diciembre de 2023.[2] En la misma, se expuso que este ilegal, voluntaria, y criminalmente abusó física y emocionalmente del señor **HÉCTOR LUIS REYES COLÓN** (señor **REYES COLÓN**), su progenitor de 66 años, y el cual es una persona de edad avanzada. Surge de la propia *Denuncia*, el señor **REYES PEÑA** golpeó con sus manos al señor **REYES COLÓN** en ambos lados de su cara, profiriéndole palabras obscenas tales como: "Cabrón; Hijo de la Gran Puta; Si mami se muere nos vamos a morir los tres". Ese mismo día, se determinó causa para arresto contra el señor **REYES PEÑA**, siendo este ingresado a prisión por no prestar la fianza impuesta.[3]

El 10 de enero de 2024, se celebró la vista preliminar.[4] En esta, se encontró causa probable para acusar al señor **REYES PEÑA** por violación al Art. 127-A del *Código Penal de Puerto Rico de 2012*.[5]

Tras varias incidencias procesales, el 13 de marzo de 2024, se celebró el *Juicio en su Fondo*.[6] En este, el señor **REYES PEÑA** renunció a su derecho a juicio por jurado, siendo aceptada su renuncia por el tribunal.[7] Incluimos un resumen de las atestaciones brindadas ante el Tribunal de Primera Instancia las cuales hemos examinado con sumo cuidado.

### Testimonio del señor REYES COLÓN

Testificó que tenía 66 años y estaba casado con la señora Elisanta Peñas Quiles.[8] Relató que el señor **LUIS MANUEL REYES PEÑA** es su hijo menor, de tres (3) hijos que tiene con su esposa.[9] Añadió que, a la fecha del 23 de diciembre de

---

[2] Véase, Autos originales, pág. 1.
[3] Véase, Autos originales, págs. 3-5.
[4] Véase, Autos originales, págs. 21-22.
[5] Artículo 127A. — Maltrato a personas de edad avanzada. (33 LPRA § 5186a) Toda persona que, cometa abuso físico, emocional, financiero, agresión, robo, apropiación ilegal, amenaza, fraude, o violación, contra una persona de edad avanzada, causándole daño o exponiéndole al riesgo de sufrir daño a su salud, su bienestar, o sus bienes, será sancionada con pena de reclusión por un término fijo de diez (10) años
[6] Véase, Autos originales, págs. 50-51.
[7] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 13 de marzo de 2025, en la pág. 1, líneas 22-28.
[8] *Id.*, en la pág. 2, líneas 7-17.
[9] *Id.*, en la pág. 2, líneas 26-31; pág. 3, líneas 1-6.

2023, vivía en Juana Díaz junto a su esposa, y su hijo menor –el señor **Reyes Peña**–, de 33 años.[10] Enunció ser retirado y recibe seguro social.[11] Expresó que, el 23 de diciembre de 2023, estaba en la cocina preparándole el desayuno a su esposa, quien está en cama y recibe diálisis, cuando llegó el señor **Reyes Peña** y le propinó "una gasnatá en la cara".[12] Exteriorizó que, no vio cuando el señor **Reyes Peña** entró a la casa, porque se encontraba de espaldas.[13] Esgrimió que, tras el incidente con el señor **Reyes Peña** se sintió humillado.[14] Asimismo, señaló que, el señor **Reyes Peña** estaba como medio loco, y decía que si su mamá se moría, se iban a morir los tres.[15] Esbozó que dichas palabras fueron realizadas en un tono agresivo.[16] Amplió que luego de ello, el señor **Reyes Peña** se fue al patio y se tiró al piso.[17] Este reseñó que, a las 4:00 de la tarde –del 23 de diciembre de 2023– la ambulancia fue a buscar a su esposa para llevarla al diálisis, y él se fue a buscar gas para la secadora. Comunicó que esperó allí hasta las 9:00 de la noche para no ir a su casa a tener peleas con el señor **Reyes Peña**.[18] Atestiguó que al llegar a su casa a eso de las 9:00 de la noche, su esposa todavía estaba en diálisis, y se sentó a comer. Arguyó que el señor **Reyes Peña** estaba bravo, con sus loqueras, dispuesto a pelear, por lo que botó la comida y se encerró en el cuarto.[19] Acto seguido, rememoró que "y como esas ventanas son de si hay incendio, tú le das para afuera y te sale. Me estoy acostado así, me salió el pa que- me las haló pa atrás. Ahí salí yo corriendo, y como era de noche, llegué a un sitio escondido allá y llamé a la policía."[20] La policía llegó a su casa, pero no encontraron al señor **Reyes Peña**.[21] Explicó que, el agente que llegó a su casa a tomarle la querella lo fue el Sgto. Rodríguez.[22] Dijo que no buscó atención médica como consecuencia de la agresión sufrida.[23] Afirmó que tampoco tenía marca alguna en su rostro producto de la agresión.[24] Reafirmó que se sintió humillado cuando el señor **Reyes Peña** le dio en la cara y pensó que como este estaba medio loco, en la noche los podía matar a él o a su esposa.[25] Apuntó, además, que no era la primera vez que llamaba a la policía, ya iban cuatro (4) veces que llamaba y lo que le

---

[10] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 13 de marzo de 2025, en la pág. 3, líneas 7-24.

[11] *Id.*, en la pág. 4, líneas 8-9.

[12] *Id.*, en la pág. 4, líneas 14-31; pág. 5, líneas 1-31; pág. 31, líneas 5-6.

[13] *Id.*, en la pág. 5, líneas 18-21.

[14] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 13 de marzo de 2025, en la pág. 7, líneas 13-15.

[15] *Id.*, en la pág. 7, líneas 18-24.

[16] *Id.*, en la pág. 7, líneas 29-31; pág. 8, líneas 1-11.

[17] *Id.*, en la pág. 8, líneas 18-24.

[18] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 13 de marzo de 2025, en la pág. 9, líneas 1-23.

[19] *Id.*, en la pág. 9, líneas 24-31; pág. 10, líneas 1-29; pág. 11, líneas 1-10; pág. 18-21.

[20] *Id.*, en la pág. 11, líneas 11-12; pág. 39, líneas 7-28.

[21] *Id.*, en la pág. 11, líneas 16-31; pág. 12, líneas 1-15.

[22] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 13 de marzo de 2025, en la pág. 38, líneas 29-31.

[23] *Id.*, en la pág. 12, líneas 16-19.

[24] *Id.*, en la pág. 12, líneas 20-22; pág. 31, líneas 2-3.

[25] *Id.*, en la pág. 12, líneas 23-31.

respondían era "tienes que llevarlo al desacato. Al desacato pa, pa un desalojo."[26] Reiteró temerle al señor **REYES PEÑA**, pues este le podía dar a él o a su esposa.[27]

### Testimonio del Sargento Alberto Rodríguez Rivera

Cercioró que, el 23 de diciembre de 2023, recibió una llamada al cuartel, relacionado a un altercado en donde había ocurrido una agresión.[28] Acto seguido, se personó a la casa del señor **REYES COLÓN**.[29] Asintió que, al llegar allí, el señor **REYES COLÓN** le admitió que su hijo, el señor **REYES PEÑA**, lo agredió en el rostro ese día por la mañana, mientras le preparaba el desayuno a su esposa, quien es progenitora del señor **REYES PEÑA**.[30] Explicó que el señor **REYES COLÓN** también le exteriorizó que el señor **REYES PEÑA** lo insultó diciéndole "cabrón, hijo de la gran puta, si a mi mamá le pasa algo, nos vamos a morir los tres."[31] Atisbó que el señor **REYES COLÓN** que fue agredido por el señor **REYES PEÑA** en dos (2) ocasiones, entiéndase, el 22 y 23 de diciembre de 2023.[32] Agregó que el señor **REYES COLÓN** le dijo temer por su seguridad, su vida y también por la de su señora esposa, la cual estaba encamada debido a que recibe diálisis.[33] Posteriormente, contactó al señor **REYES PEÑA** y lo citó al cuartel.[34] El señor **REYES PEÑA** se personó al cuartel de manera tranquila.[35] Una vez se identificó, le expuso la razón por la cual estaba allí y le leyó las advertencias de Miranda, las cuales este le informó entender.[36] Relató que el señor **REYES PEÑA** no deseo declarar.[37]

A continuación, el 15 de marzo de 2024, se celebró el acto para dictar sentencia.[38] Apreciada la evidencia y examinado el informe pre-sentencia, el tribunal de instancia declaró *culpable* del delito imputado al señor **REYES PEÑA**. El 29 de abril de 2024, se emitió la *Sentencia* apelada.

---

[26] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 13 de marzo de 2025, en la pág. 17, líneas 4-10; pág.19, líneas 4-28.
[27] *Íd.*, en la pág. 18, líneas 21-28; pág. 19, líneas 29-31; pág. 20, línea 1.
[28] *Íd.*, en la pág. 44, líneas 13-30.
[29] *Íd.*
[30] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 13 de marzo de 2025, en la pág. 45, líneas 17-30; pág. 46, líneas 1-5; pág.52, líneas 8-16.
[31] *Íd.*, en la pág. 46, líneas 6-11; pág. 52, líneas 17-24.
[32] *Íd.*, en la pág. 56, líneas 18-28.
[33] *Íd.*
[34] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 13 de marzo de 2025, en la pág. 46, líneas 18-22; pág. 59, líneas 5-6.
[35] *Íd.*, en la pág. 46, líneas 22-31; pág. 47, líneas 1-3; pág. 59, líneas 7-8.
[36] *Íd.*, en la pág. 47, líneas 4-11.
[37] *Íd.*
[38] Véase, Autos originales, pág. 57.

Inconforme con esta determinación, el 24 de mayo de 2024, el señor **REYES PEÑA** acudió ante este foro revisor, mediante *Apelación Criminal* señalando el(los) siguiente(s) error(es):

> Erró el Honorable Tribunal de Primera Instancia al encontrar culpable al apelante en virtud de una prueba que no derrotó la presunción de inocencia y mucho menos estableció su culpabilidad más allá de duda razonable.

> No renunció al derecho de poder presentar errores adicionales de derecho ante este Honorable Tribunal de Apelaciones, tras la debida evaluación del expediente de instancia y la totalidad de la prueba desfilada durante el juicio en su fondo, por el abogado apelativo a quien se le asigne el presente caso (*Henderson v. US[,] 133* S. Ct. 1121; 2013 y *Pueblo v. Soto Ríos[,]* 95 DPR 483; 1967).

El 29 de mayo 2024, pronunciamos *Resolución* reglamentando los procedimientos sobre la reproducción de la prueba oral. Posterior a ello, el 11 de marzo de 2025, mediante *Resolución* acogimos la transcripción de la prueba oral del juicio celebrado el(los) día(s) 13 y 15 de marzo de 2024. En adición, se dispuso término para la presentación del alegato y el alegato de réplica. El 4 de junio de 2025, se elevaron los autos originales.

Más tarde, el 3 de julio de 2025, el señor **REYES PEÑA** presentó su *Alegato del Apelante.* El 4 de agosto de 2025, **EL PUEBLO DE PUERTO RICO** presentó su *Alegato de El Pueblo de Puerto Rico.*

Evaluado concienzudamente el expediente del caso; contando con el beneficio de la comparecencia de ambas partes; y, habiendo examinado minuciosamente la transcripción de la prueba oral estipulada, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a las controversias planteadas.

- II –

**- A - *PRESUNCIÓN DE INOCENCIA***

Uno de los derechos fundamentales de los acusados instituidos en nuestra Constitución es la *presunción de inocencia.*[39] Es preciso expresar que el Tribunal Supremo de Puerto Rico ha reconocido que la *presunción de*

---

[39] Const. de PR, Art. II, § 11, 1 LPRA; Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, R.110.

*inocencia* constituye uno de los imperativos del *debido proceso de ley*.[40] De igual modo, es norma reiterada que esta disposición constitucional requiere que toda convicción esté fundamentada en la prueba dirigida a demostrar la existencia de "cada uno de los elementos del delito, su conexión con la persona acusada y la intención o negligencia criminal de esta".[41] Cónsono con lo anterior, para poder controvertir la *presunción de inocencia*, nuestro ordenamiento jurídico le requiere al Ministerio Público, un *quantum* probatorio de más allá de duda razonable.[42] Con este fin, el Ministerio Público debe presentar evidencia sobre la existencia de todos los elementos del delito y su conexión con el(la) acusado(a).[43] "Esto no significa que deba destruirse toda duda posible ni que la culpabilidad del acusado tenga que establecerse con certeza matemática, sino que la evidencia debe producir aquella certeza moral que convence, dirige la inteligencia y satisface la razón".[44] Así, "la duda razonable que acarrea la absolución del acusado no es una duda especulativa o imaginaria, ni cualquier duda posible. Más bien, es aquella duda producto de una consideración justa, imparcial y serena de la totalidad de la evidencia del caso".[45]

### - B – *Suficiencia de la prueba*

De otra parte, "[l]a suficiencia de la prueba es […] un análisis estrictamente en derecho que, aunque recae sobre la evidencia, sólo busca asegurar que, de cualquier manera en que se interprete la veracidad, los requisitos legales estarán presentes para poder permitir cualquiera de los veredictos posibles".[46] De acuerdo con lo dicho, "[l]a prueba suficiente, esto es, aquella que permite en derecho hallar a un ciudadano culpable más allá

---

[40] *Pueblo v. Rodríguez Pagán*, 182 DPR 239, 258 (2011).
[41] *Pueblo v. Resto Laureano*, 206 DPR 963, 967 (2021); *Pueblo v. Henríquez, Urbáez*, 205 DPR 311, 323-324 (2020); *Pueblo v. Santiago et al.*, 176 DPR 133, 142 (2009).
[42] *Pueblo v. Santiago et al., supra.*
[43] *Pueblo v. García Colón I*, 182 DPR 129, 174 (2011); Regla 110 de Procedimiento Criminal, *supra.*
[44] *Pueblo v. Cruz Granados*, 116 DPR 3, 21-22 (1984).
[45] *Pueblo v. Casillas, Torres*, 190 DPR 398, 415 (2014).
[46] *Pueblo v. Colón, Castillo*, 140 DPR 564, 581 (1996).

de duda razonable, requiere que el Estado establezca todos los elementos del delito y la conexión del acusado con los mismos".[47]

De facto, "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". Ello es así aun cuando el testimonio creído no haya sido perfecto.[48] "Después de todo, debemos recordar que no existe el testimonio 'perfecto', el cual, de ordinario, en lugar de ser indicativo de veracidad, es altamente sospechoso por cuanto, por lo general, es producto de la fabricación".[49] Por eso, "el hecho de que un testigo incurra en ciertas contradicciones no impide que el tribunal sentenciador le dé crédito a su testimonio, máxime cuando nada increíble, improbable e inverosímil se desprende de él".[50] Meras discrepancias sobre detalles no esenciales no justifican el que surja una duda razonable sobre la culpabilidad del(de la) acusado(a).[51] No obstante, procede dejar sin efecto un fallo condenatorio "cuando un análisis de la prueba que tuvo ante sí el tribunal sentenciador nos deja serias dudas, razonables y fundadas, sobre la culpabilidad del acusado".[52]

De modo que, "[l]a apreciación realizada por el juzgador de hechos sobre la culpabilidad de un acusado es una cuestión mixta de hecho y de derecho. Siendo así, la determinación de culpabilidad más allá de duda razonable es revisable en apelación como cuestión de derecho".[53] Empero, "la determinación de culpabilidad que hace el juzgador de los hechos a nivel de instancia es merecedora de una gran deferencia por parte del tribunal apelativo".[54] "La norma descansa en el hecho de que los foros de instancia están en mejor posición de evaluar la prueba desfilada, pues tienen la

---

[47] *Íd.*
[48] *Pueblo v. Chévere Heredia*, 139 DPR 1, 15 (1995).
[49] *Pueblo v. Cabán Torres*, 117 DPR 645, 656 (1986).
[50] *Pueblo v. Torres Villafañe*, 143 DPR 474, 487-488 (1997).
[51] *El Pueblo v. Irlanda Rivera*, 92 DPR 753, 760 (1965).
[52] *El Pueblo de Puerto Rico v. Carrasquillo Carrasquillo*, 102 DPR 545, 551 (1974).
[53] *Pueblo v. Casillas, Torres, supra*, págs. 415-416.
[54] *Pueblo v. Rodríguez Pagán, supra*, pág. 259.

oportunidad de observar y escuchar a los testigos [...]". Por lo tanto, "[e]n ausencia de pasión, prejuicio, parcialidad y error manifiesto, y a menos que la apreciación de la evidencia se aleje de la realidad fáctica o la prueba sea inherentemente imposible o increíble, el tribunal apelativo debe abstenerse de intervenir con la apreciación de la evidencia hecha por el foro recurrido".[55]

### - C – *ADULTOS MAYORES*

La *Carta de Derechos y la Política del Gobierno a Favor de los Adultos Mayores* fue creada con el propósito de "establecer un orden público e interés social al crear las condiciones necesarias para lograr la protección, atención, bienestar y desarrollo de los adultos mayores a partir de los sesenta (60) años[.]"[56] Así pues, todo aquel que maltrate a una persona de edad avanzada, o adulto mayor de 60 años o más, incurrirá en delito, conforme instituido en el Artículo 127-A del *Código Penal de Puerto Rico de 2012*. En específico, este consigna que:

> Toda persona que, cometa abuso físico, emocional, financiero, agresión, robo, apropiación ilegal, amenaza, fraude, o violación, contra una persona de edad avanzada, causándole daño o exponiéndole al riesgo de sufrir daño a su salud, su bienestar, o sus bienes, será sancionada con pena de reclusión por un término fijo de diez (10) años.[57]

### - III –

El señor **REYES PEÑA** puntea que el foro *a quo* erró: (i) al encontrarle culpable en virtud de una prueba que no derrotó la presunción de inocencia y mucho menos, estableció su culpabilidad *más allá de duda razonable*; y (ii) no renunció al derecho de poder presentar errores adicionales de derecho ante este Honorable Tribunal de Apelaciones, tras la debida evaluación del expediente de instancia y la totalidad de la prueba desfilada durante el juicio en su fondo, por el abogado apelativo a quien se le asigne el presente caso.

---

[55] *Pueblo v. Maisonave Rodríguez*, 129 DPR 49, 63 (1991). Véase, además, *Pueblo v. Acevedo Estrada*, 150 DPR 84, 98-99 (2000); *Pueblo v. Casillas, Torres, supra*, pág. 417; *Pueblo v. Rosario Reyes*, 138 DPR 591, 598 (1995).
[56] Ley Núm. 121 de 2019, según enmendada, 8 LPRA § 1511.
[57] Ley Núm. 146 de 2012, 33 LPRA § 5186a.

En síntesis, el señor **REYES PEÑA** alega que los hechos que motivaron la *Denuncia* se centraron en una relación estrictamente familiar, entre padre e hijo, y se trató de un evento sencillo inherente a la dinámica familiar. Incluso, refiere que lo que sucedió es un comportamiento usual entre los miembros de su familia, y el evento que ocurrió no es nuevo ni sorpresivo. De igual forma, argumenta que se trató de una acusación defectuosa, pues el señor **REYES COLÓN** no recibió atención médica, ni tuvo marca o rasguño alguno. Por último, arguye que el Estado no probó los elementos del delito *más allá de duda razonable* y, el tribunal erró en la *apreciación de la prueba*. En consecuencia, asevera que procede la revocación de la *Sentencia* apelada.

En cambio, **EL PUEBLO DE PUERTO RICO** o **ESTADO** aduce que de los testimonios vertidos en corte abierta surgió con claridad que el señor **REYES PEÑA** agredió a su progenitor en el rostro, quien es una persona de edad avanzada, le profirió palabras soeces y hasta lo amenazó de muerte. Asimismo, enfatiza que dichas acciones por parte del señor **REYES PEÑA** constituyeron daño físico y emocional, lo cual en conjunto es suficiente para sostener su culpabilidad.

En el caso de autos, el **ESTADO** presentó como prueba los testimonios del señor **REYES COLÓN** y el sargento Alberto Rodríguez Rivera (sargento Rodríguez Rivera). Del testimonio del señor **REYES COLÓN** se infiere que este recibió una agresión por parte de su hijo, así como una amenaza de muerte y tal proceder le causó humillación, así como temor por su vida y la de su esposa. Mostró, además, que no era la primera ocasión en que llamaba a la policía con relación a una situación con su hijo.

Por su parte, el sargento Rodríguez Rivera expresó en su testimonio haber tomado notas de las alegaciones hechas por el señor **REYES COLÓN** al ser entrevistado. Dichas notas fueron admitidas en evidencia. Entre estas. se destacó que el señor **REYES COLÓN** le manifestó que, si su esposa se moría, su hijo lo iba a matar. El sargento Rodríguez Rivera aclaró que el señor **REYES**

**COLÓN,** perjudicado, también le formuló haber sido agredido por su hijo el 22 de diciembre de 2023.

En vista de lo anterior, resulta forzoso concluir que, **EL PUEBLO DE PUERTO RICO** logró probar *más allá de duda razonable,* que el señor **REYES PEÑA** infringió el Artículo 127-A del *Código Penal de Puerto Rico de 2012.* Tal como se deduce de los testimonios, resulta meridianamente claro que el señor **REYES PEÑA** agredió y maltrató emocionalmente al señor **REYES COLÓN,** su padre, causándole así, daños a su salud y bienestar. Dilucidamos que los elementos del delito de maltrato a persona de edad avanzada no requieren que el perjudicado presente marca o rasguño alguno como parte de la agresión, ni que reciba atención médica a tales efectos. Por el contrario, basta que sufra una agresión y con ello, un daño. En tal caso, resulta meritorio precisar que en este caso se configuraron todos los elementos del delito imputado.

De otro lado, es pertinente concretar que las alegadas incongruencias en el testimonio del señor **REYES COLÓN** no son detalles que justifiquen *duda razonable* sobre la culpabilidad del señor **REYES PEÑA.** Las simples inconsistencias no provocan que se descarte la totalidad de la declaración de dicho testigo, pues existe en el expediente prueba consistente y creíble.

A la luz de lo antes expuesto, reconocemos que el foro sentenciador es quien está en mejor posición para aquilatar la prueba desfilada ante su consideración. Por ello, en el ejercicio de nuestra función revisora, merece que le otorguemos deferencia al foro *a quo* en cuanto a su adjudicación de credibilidad y valor probatorio. En ausencia de que se haya incurrido en pasión, perjuicio, parcialidad o error manifiesto, elucidamos validar la apreciación de la prueba del juzgador. Por tanto, discernimos que no se incidió en los errores planteados por el señor **REYES PEÑA.**

**- IV –**

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* emitida el 29 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ponce.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
